UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT ASSIL,                :
                                     :
                 Plaintiff,       :
                                       :
                -v.-            :              07 Civ. 11037 (DAB)
                                       :
                                       :
UNITED STATES OF AMERICA,   :
                                       :
                Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF ROBERT ASSIL'S RULE 41(g) MOTION

MICHAEL J. GARCIA
United States Attorney
Southern District of New York
Attorney for the United States
      of America

ANNA E. ARREOLA
Assistant United States Attorney
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT ASSIL,                                    :
                                                 :
                    Plaintiff,                   :
                                                 :
           -v.-                                  :          07 Civ. 11037 (DAB)
                                                 :
                                                 :
UNITED STATES OF AMERICA,                        :
                                                 :
                    Defendant.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

       The Government respectfully submits this memorandum of law in support of its

motion to dismiss Robert Assil's motion, pursuant to Federal Rule of Criminal Produce 41(g),

for return of property.  In his motion, Assil seeks to recover from the United States $200,000 in

U.S. currency that he invested in a fraudulent scheme.  As explained below, Assil parted with the

money when he wrote a $200,000 check to a third party, which was then deposited into the third

party's brokerage account (an account over which Assil had no control or dominion).  By the

time the Government seized the account, it was nearly empty.  The Government moves to

dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds

that (1) the motion is untimely, (2) Assil lacks standing, and (3) equitable relief is unavailable

because Assil has an adequate remedy at law.[1]

---

[1]      In support of its motion, the Government submits the Declaration of Anna E. Arreola ("Arreola Decl.") and the Affirmation of Special Agent Linda E. Canfield ("Canfield Aff."), of the United States Secret Service, both of which are dated February 4, 2008.

# BACKGROUND

In or about June 1999, the Honorable Sharon E. Grubin, United States Magistrate Judge for the Southern District of New York, issued civil seizure warrants for the contents of four Dean Witter brokerage accounts.  (Canfield Aff. ¶ 3 & Ex. A).  One account was in the name of Lester F. Whalley ("Whalley"), another was in the name of Reliance Financial Corporation ("Reliance"), and two were in the name of VCBC Holdings Ltd. ("VCBC"). (Canfield Aff. Ex. A).  Judge Grubin issued these warrants upon the application and supporting affidavit of Special Agent Thomas E. Atkinson (the "Atkinson Affidavit").  (Canfield Aff. Ex. B).

As set forth in the Atkinson Affidavit, the seizures arose from an investigation into a fraud scheme involving the sale of bogus financial investments.  (Canfield Aff. Ex. B at 6-13).  Whalley, who was later indicted, lured investors by promising fantastical returns with little or no risk.  (*See id.* at 9).  Assil and another individual, Korngute, apparently entered into an agreement to invest money in the scheme.  (*Id.* at 9-11, 18-30).  The signed agreement describes a complex series of financial transactions that would purportedly be triggered by the investments of Assil and Korngute and that would yield enormously high returns without any risk.  (*Id.* at 13-32).  Under the terms of the agreement, Korgnute and Assil agreed to wire $1,000,000 to an account held in Whalley's name (the "Whalley Account").  (*Id.* at 26-27).  Whalley would then remit fees of $250,000 to Reliance, $250,000 to an account held by VCBC, and $1,500,000 to an account held by Benedict Lam & Company Barristers, Solicitors and Notaries.  (*Id.* at 27-28).  In an amendment to the agreement, Assil and Korngute agreed that monies in the Whalley Account would be transferred to a VCBC account at Dean Witter.  (*Id.* at 34-35).

2

The Atkinson Affidavit also describes some of the deposit and withdrawal activity for the Whalley Account.  (*Id.* at 7-8).  On May 11, 1999, a $200,000 check drawn from an account held in Assil's name was deposited into the Whalley account.  (*Id.*).  On May 17, 1999, $1,000,000 was wire transferred from Korngute and credited to the Whalley Account.  (*Id.*).  On June 1, 1999, $1,025,000 was transferred from the Whalley Account to another Dean Witter account, held by VCBC.  (*Id.*).  As of June 14, 1999, the balance in the Whalley Account was $6,177.  (*Id.*).

On or about June 18, 1999, the United States Secret Service ("Secret Service") executed the warrants and seized the contents of the four accounts.  (Canfield Aff. ¶ 5 & Ex. A).  Secret Service seized a total of $2,094,089.26 in United States currency from all four accounts.  (Canfield Aff. ¶ 5 & Ex. C).  Only $6,162.00 in United States currency was seized from the Whalley Account.  (Canfield Aff. Ex. A).

Shortly thereafter, on or about July 28, 1999, five defendants, including Whalley, were charged in Indictment 99 Crim. 754 (BSJ), by a federal grand jury sitting in the Southern District of New York, with crimes relating to their role in the scheme.  The federal criminal case was subsequently transferred to the Central District of California. (*See* Arreola Decl. Ex. A).  Whalley pled guilty to a superseding Indictment on March 5, 2001.  (*Id.* at 21).  On May 17, 2001, he was sentenced by a federal court in the Central District of California to a term of 27 months' imprisonment.  (Arreola Decl. Exs. B and C).  At the sentencing proceeding, the court ordered that restitution be paid out from the funds that had been seized from the four accounts. (Arreola Decl. Ex. B at 17).  Assil was not included in the court's restitution order.  (Arreola Decl. Ex. A at 26-27, Ex. C at 1).

Following Whalley's sentencing, Secret Service paid, from the monies seized, $2,030,000 in United States currency towards restitution. (Canfield Aff. ¶ 6). The Government did not seek civil forfeiture of any remaining funds.

On December 5, 2007, Assil brought a Rule 41(g) motion for the return of the $200,000 he had invested in the scheme. Noticeably absent from the Rule 41(g) motion is any mention of the fact that no monies were seized from any accounts belonging to Assil. Although the motion alleges that the Government "froze a Morgan Stanley Dean Witter market account (No. 4841005498709) and seized $200,000 belonging to Assil," the Government did not seize any property from any accounts belonging to Assil. As explained in the Atkinson Affidavit, a $200,000 check drawn from an account held in Assil's name was deposited into the Whalley account on May 11, 1999. (Canfield Aff. Ex. B at 7). In addition, Dean Witter account records show that a $200,000 check made payable to "Lester F. Whalley" was issued from Assil's account (which is the same account identified in Assil's motion). Accordingly, Assil is seeking money that was deposited into a third party's account.[2]

## DISCUSSION

### I. The Motion Is Untimely

A.    Applicable Law

Rule 41(g) of the Federal Rules of Criminal Procedure provides:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be

---

[2]    It is unclear from the records currently available to the Government how much, if any, of the $200,000 traceable to Assil's account was included in the property seized from the other three accounts. The Court does not need to decide this factual issue in order to resolve the Government's motion.

filed in the district where the property was seized.  The court must receive
evidence on any factual issue necessary to decide the motion.  If it grants the
motion, the court must return the property to the movant, but may impose
reasonable conditions to protect access to the property and its use in later
proceedings.

Fed. R. Crim. P. 41(g).

To prevail on a Rule 41(g) motion, the moving party "must demonstrate that

(1) he is entitled to lawful possession of the seized property; (2) the property is not contraband;

and (3) either the seizure was illegal or the government's need for the property as evidence has

ended."  *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987); *Ferreira v.*

*United States*, 354 F.Supp.2d 406, 409 (S.D.N.Y. 2005).  *See also United States v. Mills*, 991

F.2d 609, 612 (9th Cir. 1993) ("Generally, a Rule 41(e) [now 41 (g)][3] motion is properly denied

if the defendant is not entitled to lawful possession of the seized property, the property is

contraband or subject to forfeiture or the government's need for the property as evidence

continues.") (internal citation and quotation marks omitted).

Where, as here, there are no pending criminal charges against the moving party,

the Rule 41(g) motion should be construed as a civil action in equity.  *See Rufu v. United States*,

20 F.3d 63, 65 (2d Cir. 1994) (where criminal defendant made post-trial motion for return of

property, motion is treated as civil complaint for equitable relief);  *Mora v. United States*, 955

F.2d 156, 158 (2d Cir. 1992) ("[W]here no criminal proceedings against the movant are pending

or have transpired, a motion for the return of property is treated as [a] civil equitable

---

[3]          *See United States v. Gotti*, 244 F. Supp. 2d 120, 123 (E.D.N.Y. 2003) (explaining
that Rule 41(e) was revised and renumbered Rule 41(g) in 2002).

proceeding[] even if styled as being pursuant to Fed. R. Crim. P. 41(e) [now 41(g)].") (internal citations and quotation marks omitted; last alteration added).

The six-year catch-all statute of limitations for civil actions against the federal government is applied to Rule 41(g) motions that are made after the termination of criminal or civil forfeiture proceedings. *Bertin v. United States*, 478 F.3d 489, 493 (2d Cir. 2007). As the Second Circuit has noted, "When property is seized and not returned or forfeited, 'the claimant knows that he has a present right to its return, and shouldn't be permitted to postpone his request for its return indefinitely.'" *Id.* (quoting *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004)). Thus, a Rule 41(g) motion accrues "when the party seeking return of his property 'discovered or had reason to discover that his property' was improperly seized." *Id.* (quoting *Polanco v. U.S. Drug Enforcement Administration*, 158 F.3d 647, 654 (2d Cir. 1998)). "[W]here . . . there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property." *Id.* at 493-94.

B.     Discussion

Here, Whalley was sentenced on May 17, 2001, and his judgment and conviction was entered on June 4, 2001. At Whalley's sentencing, the Government agreed not to seek criminal forfeiture, and the judge ordered that the seized money be paid to the victims listed in the court's restitution order. (Arreola Decl. Ex. B at 16-17). Therefore, Assil's Rule 41(g) motion accrued no later than June 4, 2001. *See Bertin*, 478 F.3d at 494 (Rule 41(g) motion accrued on the date that a defendant was sentenced); *United States v. Rodriguez-Aguirre*, 264

6

F.3d 1195, 1212 (10th Cir. 2001) ("[W]e hold that the date on which a claimant can reasonably be expected to inquire after property that has been seized by the United States in conjunction with criminal proceedings, but has not been the subject of criminal, civil or administrative forfeiture proceedings, is the date on which the criminal proceedings against the claimant have concluded."). Because Assil did not file his Rule 41(g) motion until December 5, 2007—at least six months after the six-year statute of limitations had expired, his motion is time-barred.

Notably, this case illustrates the important public policy interests underlying a statute of limitations. By the time Assil file his motion, the federal prosecutor and case agent assigned to the case had left their respective offices, and evidence had been destroyed. (*See* Canfield Aff. ¶ 2).

## II.  Plaintiff Does Not Have Standing

In any event, even if Assil's motion had been timely, it would have failed. Assil did not have an ownership interest in the accounts from which the funds were seized. Thus, he does not have standing to bring a Rule 41(g) motion.

To establish Article III standing, a claimant must demonstrate a "distinct and palpable injury to himself . . . that is the direct result of the putatively illegal conduct of the [adverse party] . . . likely to be redressed by the requested relief." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) (internal citations and quotation marks omitted). Generally, a claimant may demonstrate standing in a forfeiture action by showing some ownership or possessory interest in the property at issue. *Id.  See also United States v. Portrait of Wally*, No. 99 Civ. 9940 (MBM), 2002 WL 553532, at *6 (S.D.N.Y. Apr. 12, 2002) ("[I]n a civil

forfeiture proceeding, a claimant with an ownership or possessory interest generally will have standing . . .") (citing *Cambio Exacto*, 166 F.3d at 527).

Under New York law, once an individual deposits funds into the bank account of a third person, the individual loses title to those funds. *E.g.*, *United States v. All Fund On Deposit In the Name of Khan*, 955 F.Supp. 23, 26-27 (E.D.N.Y. 1997) (under New York Law, an individual loses title to funds once the funds are deposited into an account held in the name of a third person); *United States v. $79,000 at Bank of New York*, No. 96 Civ. 3493 (MBM), 1996 WL 648934, at *5 (S.D.N.Y. Nov. 7, 1996) (same); *United States v. Millan-Colon*, 836 F.Supp. 1007, 1020 (S.D.N.Y. 1993) (under New York law, once a check is certified by a bank, it becomes the property of the payee and the drawer loses its ownership interest).

Thus, an individual who deposits funds into the bank account of a third person lacks standing to assert a claim against the Government contesting forfeiture of the contents of the account. *E.g.*, *Khan*, 955 F.Supp. at 26-27 (customers, who gave funds to a money transmitter for transfer to Pakistan, lacked standing to contest forfeiture of the transmitter's bank account into which the funds had been deposited); *$79,000 at Bank of New York*, 1996 WL 648934, at *4-6 (claimants who deposited funds into an account held in the name of a third party lacked standing to contest forfeiture of the funds seized from the account); *Millan-Colon*, 836 F.Supp. at 1020 (drawer of check lacked standing to challenge forfeiture of the check or the funds it represented because, once the check was certified, it became the property of the payee and the drawer no longer had an ownership interest in it).[4]  Although a person who surrenders his

---

[4]    *See also* Stefan D. Cassella, *Asset Forfeiture Law in the United States* § 10-3 (2007) ("Persons who can trace their money into the bank account of a third person, but who have no right to withdraw that money, do not have standing to contest the forfeiture.

money to an account holder lacks standing against the Government, he or she may have standing against the account holder. *See e.g.*, *$79,000 at Bank of New York*, 1996 WL 648934, at *6 (although claimants who deposited funds into an account held in the name of a third party lacked standing to contest the forfeiture of the funds, they had a legal remedy against the individuals who instructed them to make a deposit).

Here, Assil wrote a check to Whalley, which was deposited into the Whalley Account. (Canfield Aff. Ex. B at 7, Ex. D). Once those funds were deposited, Assil lost his ownership interest in the funds. He therefore lacks standing to bring an action against the Government for the return of the funds seized from that account, or from any of the other accounts. Instead, his legal remedy is against the account holder. Accordingly, the motion should be denied for lack of standing.[5]

### III. Plaintiff Has An Adequate Remedy At Law

Finally, the motion must be denied because the plaintiff has an adequate remedy at law. Rule 41(g) is "an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d

---

Notwithstanding the provenance of the money, a person who surrenders his money to a third party by putting his money in the third party's bank account becomes, at most, an unsecured creditor with a cause of action against the account holder."). The author, Stefan Casella, is a Special Assistant United States Attorney.

[5]        To the extent that Assil is seeking compensation from the Government for monies that were spent toward restitution, sovereign immunity bars compensation. Rule 41(g) "simply provides for the return of seized property." *Adeleke v. United States*, 355 F.3d 144, 151 (2d Cir. 2004). Where property cannot be returned pursuant to Rule 41(g), an equitable claim for money damages must be "dismissed for lack of subject matter jurisdiction because sovereign immunity bars a federal court from ordering the United States to compensate for property that cannot be returned pursuant to Rule 41(g)." *Id.* at 147.

377, 382 (2d Cir. 2006). Here, Assil has an adequate remedy at law because he can maintain a breach of contract action against the account holder. *E.g.*, *$79,000 at Bank of New York*, 1996 WL 648934, at *6 (equitable relief was not available to claimants who deposited money into a third party's bank account because the claimants had an adequate legal remedy—to sue the individuals who instructed them to deposit the money).

## **CONCLUSION**

For the reasons stated above, the Government respectfully requests that Assil's motion for return of property be dismissed in its entirety.

Dated:    New York, NY
          February 4, 2008

                        Respectfully submitted,

                        MICHAEL J. GARCIA
                        United States Attorney

          By:    _____/s/_____
                 Anna E. Arreola
                 Assistant United States Attorney
                 Southern District of New York
                 One Saint Andrew's Plaza
                 New York, New York 10007
                 Tel. (212) 637-2218
                 Fax (212) 637-0421

10