UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

ROBERT ASSIL,                       :

                             :          AFFIRMATION

               Plaintiff,   :

     - v. -              :

                             :          07 Civ. 11037 (DAB)

UNITED STATES OF AMERICA,   :

                             :

             Defendant.  :

                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -- x

STATE OF NEW YORK         )
COUNTY OF NEW YORK      : ss.:
SOUTHERN DISTRICT OF NEW YORK   )

      Linda E. Canfield, deposes and says:

       1.     I have been a Special Agent with the United States Secret Service ("Secret

Service") for almost six years. I am currently assigned to the Financial Institution Fraud Squad,

where I have been assigned since January 2006. I submit this affirmation in support of the

Government's response to plaintiff Robert Assil's motion for return of property.

       2.     I was not one of the agents assigned to the investigation and prosecution of

*United States v. Zikorus et al.*, 99 Crim. 754 (BSJ) (SDNY), 99 Crim. 801 (ER) (CDCA). The

case agent, Thomas E. Atkinson, no longer works for Secret Service. I have not spoken with Mr.

Atkinson or any of the other agents involved in the original investigation. Thus, my familiarity

with the facts and circumstances set forth below is based upon my review of files maintained by

Secret Service, and discussions with and documents prepared by other Secret Service employees.

The case file and evidence that were stored at Secret Service's New York Field Office, which

was located at 7 World Trade Center, were destroyed on September 11, 2001. Secret Service

Headquarters, in Washington D.C., however, maintained a copy of certain documents, such as investigative reports that had been electronically sent to headquarters. The Los Angeles Field Office also maintained certain evidence. After September 11, 2001, the New York Field Office reconstructed a case file from copies of documents that had been preserved.

3.     I have obtained copies of four seizure warrants that were issued, during the investigation, for the contents of four accounts at Dean Witter. The seizure warrants were signed in or about June 1999 by the Honorable Sharon E. Grubin, United States Magistrate Judge for the Southern District of New York. Attached hereto as Exhibit A is a true and correct copy of the seizure warrants. I have reviewed the case file to determine if any other property was seized during the investigation. The only seizures referenced in the case file relate to the four accounts and a 1997 Dodge Viper.

4.     Attached hereto as Exhibit B is a true and correct copy of the affidavit by Special Agent Atkinson in support of the application for the seizure warrants. Information relating to addresses, phone numbers and account numbers has been redacted from the original affidavit.

5.     According to my review of Secret Service files, Secret Service received, on or about June 22, 1999, four checks from Dean Witter, one for each of the four accounts that had been seized. The checks were for the following amounts: (1) $6,162.00 in United States currency, (2) $145,616.00 in United States currency, (3) $913,969.00 in United States currency, and (4) $1,024,900.00 in United States currency (for a combined total of $2,090,647.00 in United States currency). Secret Service subsequently received two additional checks from Dean

2

Witter for interest that had been earned on two of the accounts. Those checks were for $690.45 and $2,751.81 in United States currency (for a combined total of $3,442.26 in United States currency). Thus, Secret Service received a total of $2,094,089.26 in United States currency from the seized accounts. Attached hereto as Exhibit C is a true and correct copy of (1) the Certified Inventories of Evidence for the six checks that Secret Service received from Dean Witter, and (2) the four checks that Secret Service initially received from Dean Witter for each of the accounts.

6.    In or about late 2001 or early 2002, Secret Service received notice from the United States Attorney's office that the federal court in *United States v. Zikorus, et al.* had ordered that all monies seized during the investigation be used to pay the victims in the court's restitution order. Pursuant to the court's order, Secret Service paid victims in the restitution order using monies that had been seized from the four Dean Witter accounts. I have verified, based upon receipts of payment maintained by Secret Service, that the following payments were made:

3

| Payee | Date of Payment | Amount |
|-------|-----------------|--------|
| Albert Korngute | February 5, 2002 | $ 500,000<br>$ 500,000<br>(total $1 million) |
| Matthew Staver | February 5, 2002 | $ 690,000 |
| Menno Wagler | February 5, 2002 | $ 1,131<br>$ 223,969<br>$ 24,900<br>(total $250,000) |
| Philip Peterson | February 5, 2002 | $ 40,000 |
| Nic Meredith | January 15, 2003 | $ 50,000 |

Thus, a total of $2,030,000.00 in United States currency was paid.

7.     Attached hereto as <u>Exhibit D</u> is a true and correct copy of a check that was received from Morgan Stanley Dean Witter, in response to a federal grand jury subpoena. I obtained this document from the United States Attorney's Office.

I declare under penalties of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

Dated:     New York, New York
           February 4, 2008

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires _May 8, 2010_

Linda E. Canfield
Special Agent
United States Secret Service

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                  :

         Plaintiff,
     -v-
                          :  Mag. Docket No. 99-

CONTENTS OF DEAN WITTER BROKERAGE
ACCOUNT NUMBER ████6-691, IN       :
THE NAME OF LESTER F. WHALLEY,
TRUSTEE OF THE ATTORNEY TRUST.     :

                          :

         Defendant-in-rem      :
- - - - - - - - - - - - - - - - - - - -x

## WARRANT OF SEIZURE
### PURSUANT TO 18 U.S.C. § 981

TO:  ANY DESIGNATED SPECIAL AGENT OF THE SECRET SERVICE AND/OR
ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

     Affidavit having been made before me by Special Agent
Thomas E. Atkinson, Jr. of the United States Service Secret,
assigned to the Financial Institution Fraud Unit, that he has
reason to believe that the above-captioned account is subject to
civil forfeiture pursuant to 18 U.S.C. § 981, and as I am
satisfied that there is probable cause to believe that the
property so described is subject to civil forfeiture pursuant to
18 U.S.C. § 981, and that said property is now located in the
Southern District of New York as above-described;

     YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize,
within ten days, by personally serving a copy of this warrant of
seizure upon the contents of Dean Witter Brokerage Account Number
████6-691 in the name of Lester F. Whalley, Trustee of the

Attorney Trust and if said property is found to be present, leave a copy of this warrant and receipt for the property seized or handed over and prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law:

THE CONTENTS OF DEAN WITTER BROKERAGE ACCOUNT NUMBER ██████6-691 IN THE NAME OF LESTER F. WHALLEY, TRUSTEE OF THE ATTORNEY TRUST.

Dated: New York, New York

June  , 1999

UNITED STATES MAGISTRATE JUDGE

SHARON E. GRUBIN
United States Magistrate Judge
Southern District of New York

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|---|
| 6/18/99 | 6/18/99 | 6:30pm | Mihal Nahari      Vice President |

INVENTORY MADE IN THE PRESENCE OF

SA Lucas Detor and Thomas Atkinson

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

Dean Witter Reynolds Inc.
Check # 20283977 in the amount of $6,162.00.
These are the contents of the Dean Witter brokerage
   Acount # ████████6691

## CERTIFICATION

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

_Thomas E. Atkinson_

Subscribed , sworn to, and returned before me this date.

_Kevin Nathaniel Fox_                          6/22/99

Executed Judge or U.S. Magistrate                        Date

DEAN WITTER REYNOLDS INC.

CITIBANK, N.A.
472 NEW YORK, NY

| DATE | ACCOUNT NUMBER | AMOUNT |
|------|----------------|--------|
| 6-21-99 | 6691-0 | $6,162.00 |

PAY TO THE ORDER OF

UNITED STATES SECRET SERVICE

DEAN WITTER REYNOLDS INC.

BY

VOID SIX MONTHS AFTER ISSUE DATE

6691 N/O LESTER WHALLEY, TTEE-ATTORNEY TRUST    100032

DETACH THIS STUB BEFORE BANKING – DEAN WITTER REYNOLDS INC.
00406-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA                                              2 (a)

            Plaintiff,

      -v-

                          :    Mag. Docket No. 99-

CONTENTS OF DEAN WITTER BROKERAGE
ACCOUNT NUMBER ███████6-093 IN THE       :
NAME OF RELIANCE FINANCIAL CORP.

                          :

                          :

          Defendant-in-rem
- - - - - - - - - - - - - - - - - - -x

### WARRANT OF SEIZURE
### PURSUANT TO 18 U.S.C. § 981

TO:  ANY DESIGNATED SPECIAL AGENT OF THE SECRET SERVICE AND/OR
ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

      Affidavit having been made before me by Special Agent

Thomas E. Atkinson, Jr. of the United States Secret Service,

assigned to the Financial Institution Fraud Unit, that he has

reason to believe that the above-captioned account is subject to

civil forfeiture pursuant to 18 U.S.C. § 981, and as I am

satisfied that there is probable cause to believe that the

property so described is subject to civil forfeiture pursuant to

18 U.S.C. § 981, and that said property is now located in the

Southern District of New York as above-described;

      YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize,

within ten days, by personally serving a copy of this warrant of

seizure upon the contents of Dean Witter Brokerage Account Number

███████6-093 in the name of Reliance Financial Corp., and if said

property is found to be present, leave a copy of this warrant and receipt for the property seized or handed over and prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law:

THE CONTENTS OF DEAN WITTER BROKERAGE ACCOUNT NUMBER ████6-093 IN THE NAME OF RELIANCE FINANCIAL CORP.

Dated: New York, New York

June   , 1999

UNITED STATES MAGISTRATE JUDGE

SHARON E. GRUBIN
United States Magistrate Judge
Southern District of New York

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH | |
|---|---|---|---|---|
| 6/18/99 | 6/18/99 | 6:30pm | Mihal Nahari | Dean Witter Vice President |

INVENTORY MADE IN THE PRESENCE OF

SA Lucas Debor and Thomas Atkinson

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

Dean Witter Reynolds Inc.
Check # 20283978 in the amount of $145,616.
These are the contents of the Dean Witter brokerage
  Account # ██████6093

---

## CERTIFICATION

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

*Thomas E Atkinson*

Subscribed , sworn to, and returned before me this date.

*Kevin Nathaniel Fox*

Federal Judge or U.S. Magistrate

6/22/99

Date

CITIBANK, N.A.
472    NEW YORK, NY

DATE    6-21-99    ACCOUNT NUMBER    6093-0    AMOUNT    $145,616.00

PAY TO THE ORDER OF

UNITED STATES SECRET SERVICE

DEAN WITTER REYNOLDS INC.

BY

VOID SIX MONTHS AFTER ISSUE DATE

6093 N/O RELIANCE FINANCIAL CORP.

DETACH THIS STUB BEFORE BANKING — DEAN WITTER REYNOLDS INC.
00406-2

100033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ORIGINAL

UNITED STATES OF AMERICA                :

                      Plaintiff,        :

           -v-                          :

CONTENTS OF DEAN WITTER BROKERAGE       :   Mag. Docket No. 99-
ACCOUNT NUMBER ████████7-277 IN THE
NAME OF VCBC HOLDINGS LTD.

                                        :

                                        :

                      Defendant-in-rem  :
- - - - - - - - - - - - - - - - - -x

**WARRANT OF SEIZURE**
**PURSUANT TO 18 U.S.C. § 981**

TO:  ANY DESIGNATED SPECIAL AGENT OF THE SECRET SERVICE AND/OR
ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

         Affidavit having been made before me by Special Agent

Thomas E. Atkinson, Jr., of the United States Secret Service,

assigned to the Financial Institution Fraud Unit, that he has

reason to believe that the above-captioned account is subject to

civil forfeiture pursuant to 18 U.S.C. § 981, and as I am

satisfied that there is probable cause to believe that the

property so described is subject to civil forfeiture pursuant to

18 U.S.C. § 981, and that said property is now located in the

Southern District of New York as above-described;

         YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize,

within ten days, by personally serving a copy of this warrant of

seizure upon the contents of Dean Witter Brokerage Account Number

████████7-277 in the name of VCBC Holdings, Ltd. and if said

property is found to be present, leave a copy of this warrant and

ꞓceipt for the property seized or handed over and prepare a
written inventory of the property seized and promptly return this
warrant and inventory before this Court as required by law:

THE CONTENTS OF DEAN WITTER BROKERAGE ACCOUNT NUMBER
████7-277 IN THE NAME OF VCBC HOLDINGS, LTD.


Dated: New York, New York

June  , 1999

UNITED STATES MAGISTRATE JUDGE

SHARON E. GRUBIN
United States Magistrate Judge
Southern District of New York

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|---|
| 6/18/99 | 6/18/99 | 6:30pm | Dean Witter<br>Mihal Nahari    Vice President |

INVENTORY MADE IN THE PRESENCE OF

SA Lucas Detor  and Thomas Atkinson

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

Dean Witter Reynolds Inc.
Check Number 20283980  in the amount of $1,024,900.
These are the contents of the Dean Witter brokerage
    Account# ███████7277

## CERTIFICATION

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

*Thomas E Atkinson*

Subscribed, sworn to, and returned before me this date.

*Kevin Nathaniel Fox*                    6/22/99

Federal Judge or U.S. Magistrate                    Date

DEAN WITTER REYNOLDS INC.

472    CITIBANK, N.A.
NEW YORK, NY

DATE  6-21-99    ACCOUNT NUMBER    7277-0    AMOUNT  $1,024,900.00

PAY TO THE ORDER OF

UNITED STATES SECRET SERVICE

DEAN WITTER REYNOLDS INC.

VOID SIX MONTHS AFTER ISSUE DATE

BY

7277 N/O VCBC HOLDINGS LTD                    100035

DETACH THIS STUB BEFORE BANKING — DEAN WITTER REYNOLDS INC.
00406-2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA              :

        Plaintiff,

    -v-

                          :  Mag. Docket No. 99-

CONTENTS OF DEAN WITTER BROKERAGE
ACCOUNT NUMBER ████████6-915 IN
THE NAME OF VCBC HOLDINGS LTD.       :

                          :

        Defendant-in-rem        :

- - - - - - - - - - - - - - - - - - -x

### WARRANT OF SEIZURE
### PURSUANT TO 18 U.S.C. § 981

TO:  ANY DESIGNATED SPECIAL AGENT OF THE SECRET SERVICE AND/OR
ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

        Affidavit having been made before me by Special Agent
Thomas E. Atkinson, Jr., of the United States Secret Service,
assigned to the Financial Institution Fraud Unit, that he has
reason to believe that the above-captioned account is subject to
civil forfeiture pursuant to 18 U.S.C. § 981, and as I am
satisfied that there is probable cause to believe that the
property so described is subject to civil forfeiture pursuant to
18 U.S.C. § 981, and that said property is now located in the
Southern District of New York as above-described;

        YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize,
within ten days, by personally serving a copy of this warrant of
seizure upon the contents of Dean Witter Brokerage Account Number
████████6-915 in the name of VCBC Holdings, Ltd. and if said
property is found to be present, leave a copy of this warrant and

receipt for the property seized or handed over and prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law:

THE CONTENTS OF DEAN WITTER BROKERAGE ACCOUNT NUMBER ███6-915 IN THE NAME OF VCBC HOLDINGS, LTD.

Dated: New York, New York

June   , 1999

_____
UNITED STATES MAGISTRATE JUDGE

SHARON E. GRUBIN
United States Magistrate Judge
Southern District of New York

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH | Dean Witter |
|---|---|---|---|---|
| 6/18/99 | 6/18/99 | 6:30pm | Mihal Nahari | Vice President |

INVENTORY MADE IN THE PRESENCE OF

SA Lucas Detor and Thomas Atkinson

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

Dean Witter Reynolds Inc.
Check #20283979 in the amount of $913,969.00.
These are the contents of the Dean Witter brokerage
    Account # ██████6915

---

## CERTIFICATION

I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.

*[signature]* Thomas E Atking

Subscribed, sworn to, and returned before me this date.

*[signature]*                                        6/22/99

Federal Judge or U.S. Magistrate                      Date

472 CITIBANK, N.A.
NEW YORK, NY

DATE 6-21-99    ACCOUNT NUMBER    ▉915-0    AMOUNT    $913,969.00

PAY TO THE ORDER OF:

DEAN WITTER REYNOLDS INC.

UNITED STATES SECRET SERVICE

BY

VOID SIX MONTHS AFTER ISSUE DATE

6915 N/O VCBC HOLDINGS LTD.

100034

DETACH THIS STUB BEFORE BANKING — DEAN WITTER REYNOLDS INC.
00406-2

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v -

CONTENTS OF DEAN WITTER
BROKERAGE ACCOUNT NUMBER
⬛6691 IN THE NAME OF
LESTER F. WHALLEY, TRUSTEE OF
THE ATTORNEY TRUST,

CONTENTS OF DEAN WITTER
BROKERAGE ACCOUNT NUMBER
⬛6093 IN THE NAME OF
RELIANCE FINANCIAL CORP,

CONTENTS OF DEAN WITTER
BROKERAGE ACCOUNT NUMBER
⬛8277 IN THE NAME OF
VCBC HOLDINGS LTD, and

CONTENTS OF DEAN WITTER
BROKERAGE ACCOUNT NUMBER
⬛6975 IN THE NAME OF
VCBC HOLDINGS LTD,

          Defendants-in-rem.
- - - - - - - - - - - - - - - - - X

SEALED
AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANT

(Title 18, U.S.C.
§ 981(a)(1)(A))

STATE OF NEW YORK     )
COUNTY OF NEW YORK    :    ss.:
SOUTHERN DISTRICT OF NEW YORK  )

       **THOMAS E. ATKINSON, JR., being duly sworn, deposes and says:**

## BACKGROUND

    1.   I have been a Special Agent with the United States Secret Service ("Secret Service") for approximately six and one half years.  Over the past four and one half years, I have been assigned to the Financial Institution Fraud Unit at Secret Service, where I have participated in numerous investigations and

1

prosecutions of individuals engaged in financial offenses such as wire fraud and money laundering. As a result of my Secret Service training and experience, I have become familiar with the methods and means by which individuals perpetrate financial crimes such as wire fraud and money laundering.

2.    In addition to my general background in investigating financial offenses, over the past four and one half years I have participated in a number of investigations and prosecutions involving "Prime Bank" instruments, which are described in greater detail below. In connection with those investigations, I have participated in interviews and debriefings of over 150 victims and participants in fraudulent "Prime Bank" and other similar schemes. I have also spoken to experts in the field of international finance who have issued warnings regarding the increased prevalence of schemes involving "Prime Bank" instruments and variations thereof, and I have both attended and spoke at seminars regarding the investigation and prosecution of "Prime Bank" fraud schemes. From these interviews, conversations and seminars, I have become familiar with the terms and methods by which individuals engaged in "Prime Bank" schemes defraud their victims and launder the proceeds.

3.    I make this affidavit in support of the Government's application for a seizure warrant for the funds contained in the following Morgan Stanley Dean Witter "MSDW" brokerage accounts: (1) account no. ▬▬▬6691, held in the name of Lester F. Whalley, Trustee of the Attorney Trust, (2) account

2

no. ████6093, held in the name of Reliance Financial Corp., (3)

account no. ████7277, held in the name of VCBC Holdings Ltd.,

and (4) account no. ████6915, held in the name of VCBC Holdings

Ltd. As set forth in greater detail below, I have probable cause

to believe that the persons controlling those accounts and others

are engaging in violations of, <u>inter alia</u>, Title 18, United

States Code, Section 1343 (wire fraud), and Title 18, United

States Code, Sections 1956(a)(1) and (a)(2), and 1957, and that

the Account represents property involved in transactions or

attempted transactions in violation of the money laundering

statute.

    4.    I am familiar with the facts and circumstances set

forth below from my personal participation in this investigation,

my conversations with other law enforcement personnel,

conversations with victims of the fraudulent scheme described

below, information provided by representatives of Dean Witter,

including interviews that they conducted, and my review of

documents gathered in the course of this investigation. Where

conversations, statements and actions of others are related

herein, they are related in substance and in part. Moreover,

because this affidavit is being submitted for a limited purpose,

I have not set forth every fact that I have learned over the

course of this investigation.

### Background to "Prime Bank" Instrument Schemes

    5.    Over the past few years, law enforcement agencies,

regulatory agencies and regulated entities have observed a

3

dramatic increase in fraudulent schemes involving the issuance,
trading and use of questionable financial instruments known as,
among other things, "Prime Bank Notes," "Prime Bank Guarantees,"
"Prime Bank Letters of Credit," "Prime European Bank Letters of
Credit, "Prime World Bank Debentures, "Prime Insurance
Guarantees," and Standby Letters of Credit (collectively "Prime
Bank Instruments" or "PBIs").  These instruments typically take
the form of notes, debentures, letters of credit, or guarantees,
which are frequently advertised by promoters as issued by the
"world prime banks" or the "top European banks."  Also typical in
the offer or use of these instruments is the promise or guarantee
of unrealistic rates of return.  Ultimately, these returns are
not realized and the investor loses the entire amount of his
investment.  Many of these schemes have been aimed at defrauding
investors in the United States and abroad.

       6.    Concern over the increase in these fraudulent
schemes has prompted regulators to issue a number of advisory
releases over the past four years.  On October 21, 1993, for
example, the United States federal financial institution
supervisory agencies, encompassing the Board of Governors of the
Federal Reserve System, the Federal Deposit Insurance
Corporation, the National Credit Union Administration, the Office
of the Comptroller of the Currency, and the Office of Thrift
Supervision, issued an interagency "Warning Concerning 'Prime
Bank' Notes, Guarantees, and Letters of Credit and Similar
Financial Instruments" (the "Interagency Warning").  The

                              4

Interagency Warning noted that:

* Certain "individuals have been improperly using the names of large, well-known domestic and foreign banks, the World Bank, and central banks in connection with their 'Prime Bank' schemes"; and

* These institutions "had no knowledge about the unauthorized use of their names or the issuance of anything akin to 'Prime Bank'-type financial instruments."

Significantly, the Interagency Warning concluded that "the staffs of the federal financial institution supervisory agencies are unaware of the legitimate use of any financial instrument called a 'Prime Bank' note, guarantee, letter of credit, debenture, or similar type of financial instrument.

7. In October 1993 and March 1994, the Securities Exchange Commission issued additional releases alerting investors and regulated entities to the escalation in fraudulent schemes involving "So-Called 'Prime' Bank and Similar Financial Instruments."

8. More recently, fraudulent schemes have arisen that use much of the same terminology and techniques of the PBI schemes to defraud investors, but do not literally involve so-called Prime Bank Notes. Such schemes have evolved in part due to the increased press coverage and public knowledge about Prime Bank frauds. Many of these new PBI-style schemes, rather than promising returns from instruments issued by "prime banks," claim that other types of investments will be secured through "major" or "A-rated" bank guarantees. Such schemes also sometimes purport to involve legitimate financial instruments such as

5

Treasury Bills, Bills of Exchange and Certificates of Deposit.

9.    It has been my experience in investigating PBI and PBI-style schemes that by the time law enforcement authorities become aware of the existence of a particular scheme, the victims' funds usually have been lost or wire-transferred to foreign accounts.  In the PBI-style scheme described below, however, we have been notified of the scheme early enough to prevent the loss of most of the funds at risk.

### The Accounts

10.    On or about June 9, 1999, I spoke with a member of MSDW's legal department, who informed me of their suspicion that a group of accounts was being used to conduct illegal activities. From that initial conversation and from subsequent conversations with representatives of MSDW and my review of records obtained from MSDW, I have learned the following:

a.    The four accounts discussed below were all opened in or about April 1999 at a Los Angeles office of MSDW and were assigned to MSDW financial advisors J. James Altonga and/or Kevin Sonico.

b.    On or about April 29, 1999, an individual named Lester F. Whalley (**"Whalley"**) opened a personal brokerage account, no. ██████6691 (the **"Whalley Account"**), under the name "Lester F. Whalley, Trustee of the Attorney Trust," at a Morgan Stanley Dean Witter office in Los Angeles, California.  Although the title of the Whalley Account suggests that it is maintained as a type of attorney escrow account, I have been informed by a

6

representative of MSDW that MSDW does not provide that type of account.

c.    The first deposits into the Whalley Account were two April 29, 1999 wire transfers totalling $250,000, including a $220,000 wire transfer from an company in Fort Wayne, Indiana and a $30,000 wire transfer from an individual in Fort Wayne, Indiana.  These wire transfers were received at a Dean Witter Citibank account in New York, New York and credited to the Whalley Account.  However, the funds only remained in the account for a few days.  On or about April 30, 1999, a $6,000 check drawn on the Whalley Account was issued to Lester Whalley.  Several days later, on or about May 3, 1999, the remaining 244,000 in the Whalley account was transferred to another MSDW account, no. █████ ██6093 (the "Reliance Account"), held in the name of Reliance Financial Corp ("Reliance").  This transfer was the initial deposit to the Reliance Account.  On or about May 12, 1999, another $145,000 was transferred from the Whalley Account to the Reliance Account.  As of June 14, 1999, the balance in the Reliance Account was $145,266.

d.    Following the withdrawal of the $250,000 initially placed into the Whalley Account, there were two additional deposits into the Whalley Account.  On or about May 11, 1999, a $200,000 check drawn on the MSDW account of an individual named Robert Assil was deposited, and on or about May 17, 1999 a $1,000,000 wire transfer from Albert Korngute was credited to the Whalley Account after being received at the Dean Witter Citibank

7

account in New York, New York. These deposits were the only additional funds added to the Whalley Account, except for approximately $1,200 of dividends attributable to these funds and approximately $120 of dividends attributable to the $250,000 used to open the account.

11.   On or about June 1, 1999, $1.025,000 was transferred from the Whalley Account to another MSDW account (the "VCBC 1 Account"), no. ████97277, held by a company known as VCBC Holdings, Ltd ("VCBC"). This transfer was the initial and only deposit into the VCBC 1 Account. As of June 14, 1999, the balance of the VCBC 1 Account was $1,024,900.

12.   VCBC also has another account at MSDW (the "VCBC 2 Account"), no. ████6915. The VCBC 2 Account was opened in or about May 1999. The initial deposit was a May 11, 1999 wire transfer of $1,010,000 million from a VCBC bank account at the First National Bank of Maryland. The wire transfer record bears a notation "United States Treasuries 25 million US Dollars". Less than two weeks before the wire, bank records indicate that approximately $1.7 million was wired to VCBC's First National Bank of Maryland account by an individual named Milo Karatosic ("Karatosic"). There have been no deposits into the VCBC 2 Account other than the initial $1,010,000 wire transfer. As of June 14, 1999, the balance of the account was $911,696.

13.   As of June 14, 1999, the balance of the Whalley Account was $6,177.

8

## The Fraudulent Scheme

14.   On or about June 16, 1999, I spoke with Albert Korngute concerning his $1,000,000 wire transfer to the Whalley Account.  Korngute, in substance, told me that he had transferred that money in connection with an investment he had been solicited to make by Lester Whalley, involving Whalley, Reliance & VCBC. Though unable to explain the details, Korngute said, in substance, that the program involved the repurchasing of United States Treasury Bills and that an investment of $1,000,000 would earn him a return of many times that amount, risk free. Based on my experience, the "investment" Korngute described seemed very likely to be a PBI scheme, and I asked Korngute to send me documents he had relating to his purported investment. He complied with my request, and I have reviewed the documents he sent.

15.   Among the documents Korngute sent me is a letter from an individual named Thomas Zikoras (**"Zikoras"**), Director of VCBC, addressed to "Clients."  The letter states that VCBC acts as an "overall facilitator" for "US Treasury Repurchase Opportunit[ies]".  Also mentioned in the letter is Karatosic (who wired approximately $1.7 VCBC shortly before the funds currently in the VCBC 2 Account were deposited), who is described as an attorney who functions as an escrow agent for funds invested by clients.   The letter describes VCBC's investment program as propriety and confidential; indeed, Korngute was requested to and did sign a confidentiality agreement with VCBC.

9

16.    Another document Korngute sent me is a 14 page agreement, titled "Escrow Instructions," which is appended hereto as Exhibit A.  The escrow agent named in the Escrow Instructions is Lester Whalley.  The agreement describes a complex series of financial transactions that will purportedly be triggered by Korngute's investment and bring Korngute a fantastically high return without subjecting his money to any risk.  The agreement was signed on May 8, 1999 by Whalley, as Escrow agent, and an individual named Lyle Howry, for Reliance.  Korngute signed the agreement on May 10, 1999, and Assil signed on May 13.  The transactions described in the agreement are as follows:

a.    Korngute and Robert Assil are each to wire $1,000,000 to the Whalley Account, which is described as an escrow account maintained by Lester Whalley.

b.    Whalley, as escrow agent, will then remit fees of $250,000 to Reliance, $250,000 to VCBC, and $1,500,000 to a firm known as Benedict Lam & Company Barristers, Solicitors and Notaries ("Benedict Lam")

c.    Reliance, upon receipt of its $250,000 fee, will "facilitate the issuance of an insurance letter of guarantee" by an "'A' rated" insurance carrier, with "an aggregate face value amount of $20,000,000.  This document to be obtained by Reliance (the "Guarantee Letter") is also referred to as an "'A' rated insurance letter of guarantee binder," a "letter of insurance," an "irrevocable letter of insurance guarantee," and a "surety letter of binder guarantee."  The Guarantee Letter

10

10

is to be used to secured Korngute's and Assil's $2 million investment.

        d.    Benedict Lam, in exchange for its $1.5 million fee, will "margin[] certain government obligations" owned by an individual named David Lai through a Hong Kong bank, and thereby establish a $100,000,000 "net cash account" at the Hong Kong bank.

        e.    The $100,000,000 "'net' cash account" will be used as the "underlying security basis" for a $90,000,000 "'unsecured' net cash line of credit account" to be established at MSDW's Los Angeles branch, in the "collective name" of Reliance, Korngute, Assil and Lai.  This account, in turn, will be used to enter into a "United States Treasury master repurchase agreement," arranged by VCBC, in exchange for its $250,000 fee.

        17.    Another document I received from Korngute is an "interim amendment" to the Escrow Instructions described above (the "Interim Amendment").  This document, appended hereto as Exhibit B, is dated May 21, 1999 and has been signed by Lester Whalley, Korngute, Korngute's brother and Assil.  There are also blank signature lines for Lyle Howry, of Reliance, and an individual named Zikorus, as Director of VCBC.  The Interim Amendment provides that, upon receipt of $1.5 million from Assil, Korngute and Korngute's brother, Zikorus will cause VCBC to place $10,000,000 of "United States Treasuries" in an MSDW account held in the name of Reliance, Assil, Korngute and Korngute's brother. Those account holders will then receive and split 40 separate

11

payments of $2.5 million, with Korngute and Assil splitting a one-third share of the funds, i.e., about $33 million.

18.    Korngute also provided me with a document he was given titled "Bill of Exchange."  This document, appended hereto with certain related documents as Exhibit C, purports to authorize Korngute and Assil to withdraw $20 million from an account maintained at Wells Fargo Bank by an entity known as the Boren Foundation, on or after April 23, 2000.  Supporting documents state that Bill of Exchange was "drawn" by Lyle Howrey of Reliance and that the Boren Foundation guarantees payment as provided in the Bill of Exchange and has overall assets totalling more than $2 billion.  These documents purportedly are, or are in some way are tied to, the $20,000,000 Guarantee Letter Reliance was to obtain.

19.    Based on my experience, as described above, I believe that the above-described documents bear numerous indicia of a PBI scheme.  These include complex and nonsensical financial jargon; the use of terms such as "A rated carrier" and "blocked funds" account; the requirement that the investor sign a confidentiality agreement; references to United States Treasury Bills and a Bill of Exchange; and, perhaps most fundamentally, the promise of an astronomical, risk free return of more than $15 million on a $1 million investment.

20.    Other facts I have learned in my investigation also suggest that a PBI scheme at work.  Today, for example, I spoke to a representative of Wells Fargo bank, who informed me

12

that the Boren Foundation, which issued the $20,000,000 Bill of Exchange payable at Wells Fargo Bank has less than $700 in its Wells Fargo Bank account.

      21.    Additionally, as described above, the Escrow Instructions falsely describe the Whalley Account as an escrow account when, in fact, it is not.

      22.    I have also spoken with a representative of First National Bank of Maryland, where VCBC maintains an account.  That person told me that on or about June 1, 1999, VCBC wired $25,000 from its account to J. James Altonga and Kevin Sonico for "consulting fees."  Altonga and Sonico, as noted above are the MSDW employees in charge of the MSDW accounts discussed herein. Their superiors at MSDW are not aware of the payment they received from VCBC.

## Statutory Provisions

      23.    The statutory provisions pursuant to which the Account is subject to seizure and forfeiture are as follows:

      a.    18 U.S.C. § 1956(a)(1), commonly known as the "money laundering" statute, imposes a criminal penalty upon

> [w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity --
>
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

13

> (B) knowing that the transaction is designed
> in whole or in part -- (i) to conceal or
> disguise the nature, the location, the
> source, the ownership, or the control of the
> proceeds of specified unlawful activity; or
> (ii) to avoid a transaction reporting
> requirement under State or Federal Law."

b.    "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense listed under 18 U.S.C. § 1961(1). Section 1961(1) lists as an offense "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1343 (relating to wire fraud)."

c.    18 U.S.C. § 1957 imposes a criminal penalty upon any person who "knowingly engages in or attempts to engage in a monetary transaction in criminally derived property that is of a value of greater than $10,000 and is derived from specified unlawful activity."

d.    The term "monetary transaction" means the "deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument . . . by, through, or to a financial institution."  18 U.S.C. § 1957(f)(1).

e.    "Criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense.  18 U.S.C. § 1957(f)(2).

f.    18 U.S.C. § 981(a)(1)(A) subjects to forfeiture "[a]ny property real or personal involved in a transaction or attempted transaction in violation of . . . section 1956 or 1957 of this title, or any property traceable to

14

such property."

g.    18 U.S.C. § 981(b)(2) provides that the
Secretary of Treasury may seize property subject to forfeiture
under § 981(a)(1)(A) when the Secretary "has obtained a warrant
for such seizure pursuant to the Federal Rules of Criminal
Procedure."

24.    Based upon the foregoing, there is probable cause
to believe that the Account represents illegal proceeds of wire
fraud involved in transactions or attempted transactions in
violation of 18 U.S.C. § 1956(a)(1)(B) and/or § 1957, or proceeds
traceable to such property.  Specifically, the evidence provides
probable cause to conclude that Whalley, Reliance, and VCBC are
all involved in perpetrating a PBI scheme; that, in furtherance
of the scheme, Lester Whalley, Lyle Howry, Thomas Zikoras and
others opened the Whalley Account, the Reliance Account, the VCBC
1 Account and the VCBC 2 Account at MDSW and later made a secret
payment to the MSDW employees who supervised those accounts;
that, in furtherance of the scheme Whalley induced Albert
Korngute to wire $1,000,000 to the Whalley Account and induced
Robert Assil to send $200,000 to the Whalley Account; that the
funds currently in the Whalley account are traceable to the funds
provided by Korngute and Assil; that the funds currently in the
Reliance Account are traceable to the funds provided by Korngute
and Assil; that the funds currently in the VCBC 1 Account are
traceable to the funds provided by Korngute and Assil; and that
the funds in the VCBC 2 Account are funds involved in furthering

15

15

the PBI scheme and are assets of a business (VCBC) subject to forfeiture for having facilitated the PBI scheme in violation of 18 U.S.C. § 1956.

25.    Accordingly, the defendant accounts are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

26.    By reason of the above, I respectfully request that the Court issue a seizure warrant pursuant to 18 U.S.C. § 981(b) for the Subject Account.

THOMAS E. ATKINSON, JR.
Special Agent
United States Secret Service

Sworn to before me this
18th day of June, 1999

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

SHARON E. GRUBIN
United States Magistrate Judge
Southern District of New York

Because of the status of this ongoing investigation, I respectfully request that this affidavit and the documents submitted herewith be sealed until further order of this Court.

KEVIN S. REED
Assistant United States Attorney

SO ORDERED:

6/18/99

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

SHARON E. GRUBIN
United States Magistrate Judge
Southern District of New York

16

# EXHIBIT A

# ESCROW INSTRUCTIONS

### (PLACEMENT OF CLIENT FUNDS FOR PURPOSE OF OBTAINING AN "A" RATED IRREVOCABLE LETTER OF INSURANCE GUARANTEE TO GUARANTEE AND SECURE CLIENT FUNDS, THE MARGIN OF GOVERNMENT OBLIGATIONS WITH STANDARD CHARTERED BANK HONG KONG FOR ESTABLISHMENT OF A ONE HUNDRED MILLION DOLLAR CASH ACCOUNT AND THE ARRANGMENT AND DELIVERY OF A SIX HUNDRED MILLION DOLLAR UNITED STATES TREASURY SECURITIES REPURCHASE AGREEMENT AS DESCRIBED HEREIN)

WHEREAS, RELIANCE FINANCIAL CORP., (THE "FIRST PARTY") HAS THE ABILITY TO FACILITATE THE ISSUANCE OF AN INSURANCE LETTER OF GUARANTEE, ISSUED BY GUARANTY & RESERVES, INC., AN INSURANCE CARRIER RATED "A" AS OF APRIL 26, 1999 BY STANDARD & POOR'S, WITH OFFICES LOCATED AT 5468 SKYLANE BOULEVARD, SUITE "E," Santa Rosa, CALIFORNIA 95403, TELEPHONE NUMBER (707) 576-3250 AND TELEFACSIMILE NUMBER (707) 569-8492, TO SERVE AND FUNCTION AS AN IRREVOCABLE GUARANTEE FOR THE MONIES INVESTED IN THE AMOUNT OF TWO MILLION DOLLARS (USD 2,000,000.00), FOR THE EXCLUSIVE PURPOSE OF OBTAINING THE DELIVERY OF THE AFOREMENTIONED "A" RATED INSURANCE LETTER OF GUARANTY BINDER AND SUBSEQUENT PHYSICAL DELIVERY OF THE ACTUAL LETTER OF INSURANCE ("LETTER OF INSURANCE"), IN THE AGGREGATE AMOUNT OF TWENTY MILLION (USD 20,000,000.00), PURSUANT TO AN IRREVOCABLE STANDBY PURCHASE COMMITMENT ARRANGEMENT BETWEEN THE FIRST PARTY AND THE LETTER OF INSURANCE GUARANTEE PROVIDER SOURCE ("INSURANCE PROVIDER"); AND

WHEREAS, MR. ROBERT ASSIL, WHOSE OFFICES ARE LOCATED AT ███ ███████, LOS ANGELES, CALIFORNIA 90049, TELEPHONE NUMBER (███) ███████ AND TELEFACSIMILE NUMBER (███) ███████ IN ASSOCIATION WITH MR. ALBERT KORNGUTE, WHOSE OFFICES ARE LOCATED AT ███████████, ████████ ███████, LOS ANGELES, CALIFORNIA 90069, TELEPHONE NUMBER (███) ████████ AND TELEFACSIMILE NUMBER (███) ███████ (HEREINAFTER COLLECTIVELY THE "SECOND PARTY"), HAVE THE ABILITY TO ARRANGE FOR THE TRANSFER OF THE REQUISITE FUNDS FOR THE COST OF THE IRREVOCABLE STANDBY PURCHASE COMMITMENT LETTER OF INSURANCE GUARANTEE TO COVER THE REQUISITE FEES REQUIRED FOR LEGAL AND FINANCIAL UNDERWRITING RELATIVE TO THE SUBJECT "A" RATED LETTER OF INSURANCE GUARANTEE ARRANGMENT TO THE BELOW NAMED ATTORNEY AT LAW'S ESCROW/TRUST BANK ACCOUNT; AND

ATTORNEY TRUST ESCROW INSTRUCTIONS          PAGE 1

WHEREAS, FIRST PARTY AND SECOND PARTY AGREE THAT THE SUBJECT LETTER OF INSURANCE HAS BEEN ARRANGED FOR THE BENEFIT OF THE SECOND PARTY BY THE FIRST PARTY, TO INDUCE THE SECOND PARTY TO INVEST A COLLECTIVE TOTAL OF TWO MILLION DOLLARS (USD 2,000,000.00), WHICH FUNDS SHALL BE IMMEDIATELY PLACED INTO ESCROW WITH THE BELOW NAMED ATTORNEY ESCROW HOLDER, IMMEDIATELY UPON THE DELIVERY OF THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE BINDER TO THE ATTORNEY ESCROW HOLDER, WHICH OCCURRED ON APRIL 25, 1999; AND

WHEREAS, THE TWO MILLION DOLLARS (USD 2,000,000.00) ARRANGED BY THE SECOND PARTY AND SECURED BY THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE ARRANGED BY THE FIRST PARTY, WILL BE USED FOR THE EXCLUSIVE PURPOSES OF MARGINING CERTAIN GOVERNMENT OBLIGATIONS AT SEVENTY PERCENT (70%) OF THE FACE VALUE, THROUGH STANDARD CHARTERED BANK HONG KONG BRANCH, WHICH INVESTMENT OBLIGATIONS BELONG TO MR. DAVID LAI, WHOSE OFFICES ARE LOCATED C/O JEFFREY RUSTAND ATTORNEY AT LAW, BENEDICT LAM & COMPANY BARRISTERS, SOLICITORS AND NOTARIES, MORCO POLO BUILDING, 88 EAST PENDER STREET, SUITE 506, VANCOUVER, BRITISH COLUMBIA, CANADA V6A 1T1, TELEPHONE NUMBER (604) 683-7282 AND TELEFACSIMILE NUMBER (604) 688-6388, AT STANDARD CHARTERED BANK HONG KONG AND SHANGHAI CHINA BRANCH, (HEREINAFTER THE "CASH ACCOUNT HOLDER"); AND

WHEREAS, UPON THOSE CERTAIN GOVERNMENT OBLIGATIONS BELONGING TO THE CASH ACCOUNT HOLDER BEING MARGINED FOR A ONE HUNDRED MILLION DOLLAR (USD 100,000,000.00) "NET" CASH ACCOUNT IN THE HONG KONG BRANCH STANDARD CHARTERED DAVID LAI ACCOUNT, THE ONE HUNDRED MILLION DOLLAR (USD 100,000,000.00) "NET" CASH ACCOUNT IN THE HONG KONG BRANCH STANDARD CHARTERED DAVID LAI ACCOUNT WILL BE UTILIZED AS THE UNDERLYING SECURITY BASIS FOR THE ESTABLISHMENT OF A NINETY MILLION DOLLAR (USD 90,000,000.00) "UNSECURED NET" CASH LINE OF CREDIT ACCOUNT, IN THE MUTUAL AND COLLECTIVE NAME FIRST PARTY, SECOND PARTY AND CASH ACCOUNT HOLDER; AND

*Cash account Holder's account # U P P S A 301/221*

WHEREAS, NINETY MILLION DOLLAR (USD 90,000,000.00) "UNSECURED NET" CASH LINE OF CREDIT ACCOUNT, IN THE MUTUAL AND COLLECTIVE NAME FIRST PARTY, SECOND PARTY AND CASH ACCOUNT HOLDER SHALL BE MAINTAINED AT MORGAN STANLEY DEAN WITTER, 601 SOUTH FIGUEROA STREET, 28TH FLOOR, LOS ANGELES, CALIFORNIA 90017, TELEPHONE NUMBER (213) 553-3394 AND TELEFACSIMILE NUMBER (213) 819-5117, FOR THE PURPOSES OF

ATTORNEY TRUST ESCROW INSTRUCTIONS          PAGE 2

19

ENTERING INTO UNITED STATES TREASURY MASTER REPURCASHE AGREEMENT ARRANGEMENT; AND

WHEREAS, THE UNITED STATES TREASURY MASTER REPURCASHE AGREEMENT ARRANGEMENT HAS BEEN ARRANGED BY VCBC HOLDINGS, LTD., WHOSE OFFICES ARE LOCATED AT ~~~~~~~~~~~~~~~~~, BALTIMORE, MARYLAND 21212, TELEPHONE NUMBER (~~~~~~~~~ND TELEFACSIMLE NUMBER (~~~~~~~~ ~~~ (HEREINAFTER THE "TREASURY REPO FACILITATOR"). FOR THE MUTUAL AND COLLECTIVE BENEFIT OF THE FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER AND TREASURY REPO FACILITATOR; AND

WHEREAS, LESTER F WHALLEY (HEREINAFTER THE "ESCROW AGENT"), WHOSE OFFICES ARE LOCATED AT ~~~~~~~~~~~~~~~~~~~~~~, TORRANCE, CALIFORNIA 90501, TELEPHONE NUMBER (~~~~~~~~0 AND TELEFACSIMILE NUMBER (~~~~~~~ IS AN ATTORNEY-AT-LAW, IN GOOD STANDING AND LICENSED TO PRACTICE LAW IN THE STATE OF CALIFORNIA UNITED STATES OF AMERICA, HAS AGREED TO HANDLE THE DISBURSEMENTS OF FUNDS TO COVER THE REQUISTE COSTS OF THE IRREVOCABLE STANDBY PURCHASE COMMITMENT LETTER OF INSURANCE GUARANTEE, THE MARGIN OF THE UNITED STATES GOVERNMENT OBLIGATIONS FOR THE ESTABLISHMENT OF THE ONE HUNDRED MILLION DOLLAR (USD 100,000,000.00) "NET" ACCOUNT AT STANDARD CHARTERED HONG KONG, THE NINETY MILLION DOLLAR (USD 90,000,000.00) "UNSECURED NET" CASH LINE OF CREDIT FOR PLACEMENT FOR THE MUTUAL AND COLLECTIVE BENEFIT OF THE FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER AND TREASURY REPO FACILITATOR AT MORGAN STANLEY DEAN WITTER AND TO HANDLE AND FACILITATE TO SAFEKEEPING AND CUSTODY OF THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE AS WELL AS THE PORTFOLIO OF UNITED STATES TREASURIES: AND

IN FURTHERANCE OF THE UNDERLYING CONTEMPLATED TRANSACTION, LESTER F. WHALLEY, LICENSED ATTORNEY-AT-LAW, AGREES ON BEHALF OF THE FIRST PARTY, FOR THE MUTUAL AND COLLAECTIVE BENEFIT OF THE FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER AND TREASURY REPO FACILITATOR, TO ACT AS THE ESCROW AGENT (HEREINAFTER THE "ESCROW AGENT") TO:

(1) RECEIVE AND ACCEPT THE REQUISITE FUNDS IN THE SUM OF TWO MILLION DOLLARS (USD 2,000,000.00) ON BEHALF OF THE SECOND PARTY FOR THE TRANSACTION AS FOLLOWS:

(2) RECEIVE AND ACCEPT REQUSITE FUNDS IN THE AMOUNT OF TWO HUNDRED FIFTY THOUSAND DOLLARS (USD 250,000.00) ON BEHALF OF THE FIRST PARTY

ATTORNEY TRUST ESCROW INSTRUCTIONS          PAGE 3

FOR THE EXCLUSIVE PURPOSE OF REMITTING THE SET UP COSTS FOR LEGAL AND
FINANCIAL UNDERWRITING FOR THE PLACING AND DELIVERY OF THE
IRREVOCABLE LETTER OF INSURANCE GUARANTEE, AND TO HOLD AND
DISBURSE THE ESCROWED FUNDS ON BEHALF OF THE SECOND
PARTY FOR THE BENEFIT FOR DISBURSEMENT TO THE FIRST PARTY; AND

(3) TO CONFIRM AND VALIDATE THE AVAILABILITY OF THE IRREVOCABLE
LETTER OF INSURANCE GUARANTEE WITH THE INSURANCE PROVIDER
THEREOF, AND TO CONFIRM AND DELIVER THE IRREVOCABLE LETTER OF
INSURANCE GUARANTEE TO THE FIRST PARTY'S BANK AS THE UNDERLYING
GUARANTEE AND/OR COLLATERAL FOR THE SECOND PARTY'S TWO MILLION
DOLLAR INVESTMENTS TO COVER THE COSTS OF THE IRREVOCABLE LETTER OF
INSURANCE GUARANTEE BINDER DELIVERY, THE MARGIN OF THE
GOVERNMENT OBLIGATIONS OWNED BY THE CASH ACCOUNT HOLDER
AS WELL AS TO DELIVER THE MASTER REPURCHASE AGREEMENT AND
SUBSEQUENT UNITED STATES TREASURIES BY THE TREASURY REPO
FACILITATOR FOR THE MUTUAL AND COLLECTIVE BENEFIT OF THE FIRST
PARTY, SECOND PARTY, CASH ACCOUNT HOLDER AND TREASURY REPO
FACILITATOR, AND

(4) TO SPECIFICALLY FACILITATE THE ISSUANCE OF THE IRREVOCABLE LETTER
OF INSURANCE GUARANTEE IN THE AGGREGATE FACE VALUE AMOUNT OF
TWENTY MILLION DOLLARS (USD 20,000,000.00), TO THE CASH ACCOUNT
HOLDER'S ATTORNEY TO SPECIFICALLY FACILITATE THE MARGIN OF CERTAIN
GOVERNMENT OBLIGATIONS WITH STANDARD CHARTERED BANK Hong Kong
FOR A "NET" ONE HUNDRED MILLION DOLLARS (USD 100,000,000.00) IN THE
STANDARD CHARTERED DAVID LAI ACCOUNT AND TO THE TREASURY REPO
FACILITATOR TO SPECIFICALLY FACILITATE THE DELIVERY OF UNITED STATES
TREASURIES TO MORGAN STANLEY DEAN WITTER FOR THE MUTUAL BENEFIT OF
THE FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER AND TREASURY
REPO FACILITATOR.

ESCROW AGENT AGREES TO DISPENSE OF SUCH FUNDS AND TO ACT IN
ACCORDANCE WITH THE FOLLOWING TERMS AND CONDITIONS:

1. <u>NOTIFICATIONS</u>:

(A) ESCROW AGENT WILL NOTIFY THE FIRST PARTY, CASH ACCOUNT
HOLDER OF THE RECEIPT AND AVAILABILITY OF THE ESCROWED FUNDS
WITHIN 1-BUSINESS DAY AFTER RECEIVING NOTIFICATION FROM THE SECOND

ATTORNEY TRUST ESCROW INSTRUCTIONS                         PAGE 4

**PARTY** THAT SUCH FUNDS HAVE BEEN DEPOSITED IN THE **ESCROW AGENTS**
ACCOUNT AT MORGAN STANLEY DEAN WITTER ATTORNEY CLIENT TRUDT
ACCOUNT BY SECOND PARTY'S BANK.

**(B)** ANY NOTICES REQUIRED TO BE MADE HEREUNDER THESE ESCROW
INSTRUCTIONS SHALL BE MADE TO AS FOLLOWS:

IF TO: **ESCROW AGENT**:

LESTER F. WHALLEY, ATTORNEY-AT-LAW

TORRANCE, CA. 90501

IF TO: **THE FIRST PARTY**

     RELIANCE FINANCIAL CORP.

     LAS VEGAS, NEVADA  89109
     TELEPHONE:
     FACSIMILE: (

IF TO: **THE SECOND PARTY**

MR. ROBERT ASSIL                              MR. ALBERT KORNGUTE

LOS ANGELES, CA. 90049              LOS ANGELES, CA. 90069
PH. (    )                                            PH. (    )
FAX (    )                                          FAX (    )

IF TO: **CASH ACCOUNT HOLDER**

MR. DAVID LAI
C/O JEFFREY RUSTAND ATTORNEY AT LAW
BENEDICT LAM & COMPANY BARRISTERS, SOLICITORS AND NOTARIES
MORCO POLO BUILDING, 8
VANCOUVER, BRITISH COLUMBIA, CANADA  V6A 1T1
PH.
FAX
_cash account Holder's account # is PPSA 301/221_

IF TO: **TREASURY REPO FACILITATOR**

MR. THOMAS W. ZIKORUS

ATTORNEY TRUST ESCROW INSTRUCTIONS                    PAGE 5

06/16/1999 16:59   ALBERT KURNGUTE   PAGE 00
FROM : JANDJ ENTERPRISES BLUE LION IN PHONE NO. :   Apr. 27 1999 06:54PM P26

VCBC HOLDINGS, LTD.

BALTIMORE, MARYLAND  21212, USA
PH.
FAX

## 2. RELEASE OF ESCROW FUNDS:

(A) THE ESCROW AGENT WILL RELEASE FEES DUE IN THE AMOUNT OF TWO HUNDRED FIFTY THOUSAND DOLLARS (USD 250,000.00) TO THE **FIRST PARTY** IN CONSIDERATION FOR SERVICES RENDERED IN THE DELIVERY AND ISSUANCE OF THE "A" RATED IRREVOCABLE LETTER OF INSURANCE GUARANTEE TO SECURED THE TWO MILLION DOLLAR (USD 2,000,000.00) INVESTMENT OF THE **SECOND PARTY**, WRITTEN IN FAVOR OF THE **SECOND PARTY**, UPON **ESCROW AGENT'S** WRITTEN RECEIPT AND SATISFACTORY CONFIRMATION PROVIDED BY THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE BINDER FROM THE **INSURANCE PROVIDER** THAT THE SUBJECT LETTER OF INSURANCE GUARANTEE BINDER IS A VALID INSTRUMENT RATED "A" BY STANDARD & POORS PURSUANT TO THE MUTUAL EXECUTION OF THE AGREEMENT BY THE LETTER OF INSURANCE GUARANTEE PROVIDER AND RELIANCE AND/OR ITS AFFILIATES AND/OR ASSIGNS TO BE RELEASED FORTHWITH UPON RECEIPT THEREOF BY THE **ESCROW AGENT**.

(B) FEES DUE IN THE AMOUNT OF ONE MILLION FIVE HUNDRED THOUSAND DOLLARS (USD 1,500,000.00) TO THE **CASH ACCOUNT HOLDER'S** ATTORNEY (MR. DAVID LAI) FOR REMITTANCE TO STANDARD CHARTERED BANK HONG KONG BRANCH AS CONSIDERATION FOR SERVICES RENDERED IN THE MARGIN OF CERTAIN GOVERNMENT OBLIGATIONS OWNED AND CONTROLLED BY MR. DAVID LAI (THE **CASH ACCOUNT HOLDER**), SPECIFICALLY FOR THE PURPOSES OF COVERING THE COSTS OF THE MARGIN OF THE SUBJECT GOVERNMENT OBLIGATIONS OWNED AND CONTROLLED BY THE **CASH ACCOUNT HOLDER**, AT SEVENTY PERCENT (70%) OF THE VALUE OF THE SAID GOVERNMENT OBLIGATIONS OWNED AND CONTROLLED BY THE **CASH ACCOUNT HOLDER** TO ESTABLISH THE "NET" ONE HUNDRED MILLION DOLLAR (USD 100,000,000.00) CASH ACCOUNT IN STANDARD CHARTERED BANK HONG KONG ONCE THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE BINDER IS DELIVERED BY THE **INSURANCE PROVIDER**, AS ARRANGED BY THE **FIRST PARTY** TO THE **ESCROW AGENT**.

(C) FEES DUE IN THE AMOUNT OF TWO HUNDRED FIFTY THOUSAND DOLLARS

ATTORNEY TRUST ESCROW INSTRUCTIONS                    PAGE 6

(USD 250,000.00) TO THE TREASURY REPO FACILITATOR AS CONSIDERATION
FOR SERVICES RENDERED IN THE DELIVERY AND ISSUANCE OF A MASTER
UNITED STATES TREASURY REPURCHASE AGREEMENT AND THE SEBSEQUENT
DELIVERY OF A PORTFOLIO OF ONE (1) YEAR UNITED STATES TREASURIES IN
THE FACE VALUE OF SIX HUNDRED MILLION DOLLARS (USD 600,000,000.00) FOR
THE MUTUAL AND COLLECTIVE BENEFIT OF THE **FIRST PARTY, SECOND PARTY,
CASH ACCOUNT HOLDER AND TREASURY REPO FACILITATOR** UPON **FIRST
PARTY'S** MUTUAL AGREEMENT RRANGES THE ISSUANCE AND DELIVERY OF
THE AFOREMENTIONED "A" RATED IRREVOCABLE LETTER OF INSURANCE
GUARANTEE BINDER TO THE **ESCROW AGENT** FROM THE **INSURANCE
PROVIDER** AND UPON CONFIRMATION OF **THE** DELIVERY OF THE PORTFOLIO OF
ONE (1) YEAR UNITED STATES TREASURIES IN THE FACE VALUE OF SIX
HUNDRED MILLION (USD 600,000,000.00).

(D) ANY SUCH CONFIRMATION WILL BE ATTACHED TO THESE INSTRUCTIONS AS
AN EXHIBIT AND MADE A PART THEREOF.

(E) SUCH SATISFACTORY WRITTEN RECEIPT AND CONFIRMATION PROVIDED THE
 **ESCROW AGENT** FROM THE **FIRST PARTY, INSURANCE PROVIDER, CASH
ACCOUNT HOLDER AND TREASURY REPO FACILITATOR** IS HEREBY
ACKNOWLEDGED BY THE **SECOND PARTY** WHEN THE INSURANCE PROVIDER
ISSUED AND DELIVERS THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE
BINDER, AND, BY THE RESPECTIVE SIGNATURE OF THE **FIRST PARTY** HERETO, IT
IS THE MUTUAL AGREEMENT OF THE **FIRST PARTY, SECOND PARTY, CASH
ACCOUNT HOLDER AND TREASURY REPO FACILITATOR** THAT **ESCROW
AGENT** IS INSTRUCTED TO RELEASE THE TWO MILLION DOLLARS (USD
2,000,000.00) (THE "ESCROWED FUNDS") ACCORDING TO THESE ESCROW
INSTRUCTIONS BY THEIR RESPECTIVE SIGNATURES AT THE APPROPRIATE
PLACES PROVIDED IN THE APPROPRIATE SPACES HEREINBELOW.

(F) UPON DELIVERY OF THE IRREVOCABLE LETTER OF INSURANCE GUARANTEE
BINDER BY THE **INSURANCE PROVIDER** TO THE ESCROW AGENT, THE TWO
MILLION DOLLARS (USD 2,000,000.00) (THE "ESCROW FUNDS") WILL BE
FORTWITH RELEASED WITH WITHOUT PROTEST OR DELAY TO THE **FIRST
PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR**
HERETO AS HEREINAFTER SET FORTH.

3. HOLD HARMLESS:

(A) IN ORDER TO INDUCE THE **ESCROW AGENT** TO ACT IN SUCH CAPACITY FOR

ATTORNEY TRUST ESCROW INSTRUCTIONS          PAGE 7

THE TERM OF THIS TRANSACTION, ALL PARTIES TO THESE ESCROW INSTRUCTIONS AGREE AND ACKNOWLEDGE AS FOLLOWS:

(1) THE **ESCROW AGENT** SHALL BE ENTITLED TO RELY ON SUCH NOTICES OR CERTIFICATES IN ORIGINAL OR BY FACSIMILE TRANSMISSION AS MAY BE FURNISHED BY EITHER THE **FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER**, INSURANCE **PROVIDER** AND **TREASURY REPO FACILITATOR** WITHOUT INQUIRING INTO THE SUFFICIENCY OR ACCURACY THEREOF EXCEPT AS SET FORTH MORE SPECIFICALLY HEREIN.

(2) THE **ESCROW AGENT** IS ACTING ONLY IN SUCH CAPACITY AND UPON CAUSING THE DELIVERY OF THE ESCROWED FUNDS HEREIN IN THE MANNER AND METHODS HEREIN PROVIDED, THE **ESCROW AGENT** SHALL HAVE NO FURTHER LIABILITY HEREUNDER FOLLOWING THE DISBURSEMENT OF THE FUNDS TO THE **FIRST PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR** AS DETAILED HEREIN.

(3) IT IS ACKNOWLEDGED AND AGREED THAT THE DUTIES OF THE **ESCROW AGENT** ARE ONLY AS HEREIN SPECIFICALLY PROVIDED AND SUCH DUTIES ARE EXCLUSIVELY ADMINISTRATIVE IN NATURE IN FURTHERANCE OF THE CONTEMPLATED TRANSACTION BETWEEN THE **FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR**.

(4) FURTHER, IT IS ACKNOWLEDGED AND AGREED, THAT THE **ESCROW AGENT** SHALL INCUR NO LIABILITY WHATSOEVER FOR ANY ACTION IN PERFORMANCE OF HIS DUTIES HEREUNDER.

(5) THE **FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR** EACH AGREE TO RELEASE THE **ESCROW AGENT** FROM ANY ACT DONE, OR OMITTED TO BE DONE BY THE **ESCROW AGENT** IN GOOD FAITH AND IN THE PERFORMANCE OF THE **ESCROW AGENT'S** DUTIES HEREUNDER.

(6) THE **FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR** INDEMNIFY AND HOLD THE **ESCROW AGENT** HARMLESS FROM AND AGAINST ALL COSTS, CLAIMS, DEMANDS, SUITS, JUDGMENTS AND LIABILITIES OF WHATEVER NATURE, INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEY'S FEES INCURRED IN CONNECTION WITH THE PERFORMANCE OF THE **ESCROW AGENT'S** DUTIES HEREUNDER, EXCEPT WITH RESPECT TO ACTIONS OR OMISSIONS TAKEN OR SUFFERED BY OR

ATTORNEY TRUST ESCROW INSTRUCTIONS                    PAGE 8

INVOLVING GROSS NEGLIGENCE ON THE PART OF THE **ESCROW AGENT**.

(7) THE **ESCROW AGENT** HAS EXECUTED THESE ESCROW INSTRUCTIONS SOLELY TO CONFIRM THAT HE AGREES TO HOLD THE ESCROWED FUNDS IN ESCROW PURSUANT TO THE PROVISIONS HEREOF.

(8)   THE ABOVE TERMS AND CONDITIONS OF ESCROW ARE IRREVOCABLE AND MAY NOT BE AMENDED UNLESS AMENDED IN WRITING AND SIGNED BY THE **FIRST PARTY, SECOND PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR** AND ACKNOWLEDGED BY THE **ESCROW AGENT**.

(9) ANY AND ALL FEES FOR PERFORMING THE DUTIES OF THE **ESCROW AGENT** IN THIS MATTER ALONG WITH ALL BANK CHARGES, FEES, IMPOSTS, COSTS, ETC. SHALL BE PAID BY ~~SECOND~~ PARTY. *FIRST*

(10) THESE ESCROW INSTRUCTIONS SHALL BE GOVERNED AND CONSTRUED TO BE INTERPRETED UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND TO SUCH RELATED STATUTES GOVERNING SUCH ESCROW ACTIVITY.

4. **WIRING INSTRUCTIONS**:

(A) WITHIN 3-CALENDAR DAYS FOLLOWING THE EXECUTION OF THESE ESCROW INSTRUCTIONS, **SECOND PARTY** SHALL INSTRUCT ITS BANK TO REMIT ESCROW FEES TO **ESCROW AGENT**'S ACCOUNT AS FOLLOWS:

BANK NAME: MORGAN STANLEY-DEAN WITTER   *406 111 72   CITIBANK N.J.*
ADDRESS: 601 SOUTH FIGUROA STREET. 28TH FLOOR
ACCOUNT NAME: LESTER F. WHALLEY, ATTORNEY TRUST ACCOUNT
ACCOUNT NO █████6691-188
ABN ROUTING: 021000089
SWIFT: CITI US 33
BANK OFFICER: JEB ALTONGA – KEVIN SONICO
BANK TELEPHONE: (██████ ████████
BANK FACSIMILE: (████████
AMOUNT: $2,000,000.00

MR. ROBERT ASSIL SHALL REMIT THE AMOUNT OF ONE MILLION DOLLARS (USD 1,00,000.00 TO THE ACCOUNT OF **ESCROW AGENT** FOR THE BENEFIT OF **FIRST PARTY, CASH ACCOUNT HOLDER** AND **TREASURY REPO FACILITATOR** RELATIVE TO THIS UNDERTAKING FROM THE FOLLOWING ACCOUNT:

ATTORNEY TRUST ESCROW INSTRUCTIONS                    PAGE 9

ADDRESS: 601 SOUTH FIGUROA STREET, 28TH FLOOR
ACCOUNT NAME: MR. ROBERT ASSIL
ACCOUNT NO: 237-        - 188
ABN ROUTING: 021000089
SWIFT: CITI US 33
BANK OFFICER: JEB ALTONGA – KEVIN SONICO
BANK TELEPHONE: (██████████), (██████████)
BANK FACSIMILE: (██████████)
AMOUNT: $1,000,000.00

MR. ALBERT KORNGUTE SHALL REMIT THE AMOUNT OF ONE MILLION DOLLARS
(USD 1,000,000.00 TO THE ACCOUNT OF **ESCROW AGENT** FOR THE BENEFIT OF
**FIRST PARTY, CASH ACCOUNT HOLDER AND TREASURY REPO FACILITATOR**
RELATIVE TO THIS UNDERTAKING FROM THE FOLLOWING ACCOUNT:

ADDRESS: 601 SOUTH FIGUROA STREET, 28TH FLOOR
ACCOUNT NAME: MR. ALBERT KORNGUTE
ACCOUNT NO: 237-        - 188
ABN ROUTING: 021000089
SWIFT: CITI US 33
BANK OFFICER: JEB ALTONGA – KEVIN SONICO
BANK TELEPHONE: (██████████)1, (██████████)
BANK FACSIMILE: (██████████)
AMOUNT: $1,000,000.00

(B) **SECOND PARTY** SHALL IMMEDIATELY PROVIDE TO **ESCROW AGENT** A
FACSIMILE COPY OF THE BANK WIRE TRANSFER BY SECOND PARTY'S BANK TO
**ESCROW AGENT**, WITH A COURTESY COPY PROVIDED TO **FIRST PARTY** BY
FACSIMILE.

(C) **ESCROW AGENT** HEREBY WARRANTS THAT FUNDS ON DEPOSIT TO BE HELD
IN ESCROW SHALL BE HELD AND DISTRIBUTED IN STRICT CONFORMITY WITH
THE INSTRUCTIONS PROVIDED HEREIN.

(D) **ESCROW AGENT** SHALL NOT ENTERTAIN INSTRUCTIONS TO DISTRIBUTE THE
ESCROW FUNDS IN ANY OTHER MANNER OTHER THAN AS SET FORTH HEREIN.

(E) **ESCROW AGENT** SHALL REMIT FUNDS IN THE AMOUNT OF TWO HUNDRED
FIFTY THOUSAND DOLLARS (USD 250,000.00) TO THE ACCOUNT OF **FIRST PARTY**
AS FOLLOWS:

ATTORNEY TRUST ESCROW INSTRUCTIONS                    PAGE 10

CITIBANK, NEW YORK
111 WALL STREET, NY, NY  10043
FOR THE BENEFIT OF MORGAN STANLEY DEAN WITTER
ACCOUNT NO: ████████
FOR FURTHER CREDIT TO RELAINCE FINANCIAL
ACCOUNT NO. ████6093-188
A.B.A NO. 021000089
S.W.I.F.T. CODE:  CITI US 33

(F) **ESCROW AGENT** SHALL REMIT FUNDS IN THE AMOUNT OF ONE MILLION FIVE
HUNDRED THOUSAND DOLLARS (USD 1,500,000.00) TO THE ACCOUNT OF **CASH
ACCOUNT HOLDER** AS FOLLOWS:

TORONTO DOMINION BANK OF CANADA
**ASIAN BANKING** CENTRE
**88 EAST PENDER STREET**
VANCOUVER, BRITISH COLUMBIA, CANADA  V6A 1T1
ACCOUNT NAME:  BENEDICT LAM & COMPANY BARRISTERS, SOLICITORS AND
                          NOTARIES
ACCOUNT NO.: ████████████████
UNITED STATES DOLLARS ROUTED THROUGH BANK OF AMERICA
A.B.A. ROUTING NO.: 02609593
S.W.I.F.T. CODE:  BOFA US 3N

(G) **ESCROW AGENT** SHALL REMIT FUNDS IN THE AMOUNT OF TWO HUNDRED
FIFTY THOUSAND DOLLARS (USD 250,000.00) TO THE ACCOUNT OF **TREASURY
REPO FACILITATOR** AS FOLLOWS:

FIRST NATIONAL BANK OF MARYLAND
OWINGS MILLS NEW TOWN BRANCH
OWINGS MILLS, MARILAND 21212
ACCOUNT NAME: VCBC HOLDINGS LTD.
ACCOUNT NO. ████████
A.B.A NO. 052 00133

**5. MISCELLANEOUS:**

(A) A FULLY EXECUTED FACSIMILE TRANSMISSION OF THESE ESCROW
INSTRUCTIONS SHALL BE ACCEPTED AS THOUGH THE ESCROW INSTRUCTIONS

ATTORNEY TRUST ESCROW INSTRUCTIONS                    PAGE 11

06/16/1999 16:58 Case 1:07-cv-11037-DAB   Document 13-3   Filed 02/05/2008   Page 29 of 40
ALBERT KORNGUTE
PAGE 12
Apr. 27 1999 07:01PM P32

FROM : JANDJ ENTERPRISES BLUE LION IN  PHONE NO. :

WERE ISSUED AS AN ORIGINAL DOCUMENT.

(B) THESE ESCROW INSTRUCTIONS ARE EXECUTED IN THREE OR MORE
COUNTERPARTS. WHICH ARE HEREBY ACKNOWLEDGED AND ACCEPTED BY THE
PARTIES HERETO AND OPERATIVE AS OF THE LATEST DATE SET FORTH BELOW.

**ESCROW AGENT:** _Lester F Whalley_ DATE _4-27_ 1999
  LESTER F. WHALLEY

**THE FIRST PARTY:**

**RELIANCE FINANCIAL CORP.** _Lyle Howry_ DATE _5-9-_ 1999
  LYLE HOWRY _by Lester F Whalley atty-in-fa_

**THE SECOND PARTY:**

**ROBERT ASSIL:** DATE _5/10/_ 1999
  ROBERT ASSIL

**THE SECOND PARTY:**

**ALBERT KORNGUTE:** DATE _5/13_ 1999
  ALBERT KORNGUTE

**CASH ACCOUNT HOLDER:**

**DAVID LAI:** _____ DATE _____ 1999
  DAVID LAI

**TREASURY REPO FACILITATOR:**
VCBC HOLOINGS, LTD.
  _____ DATE _____ 1999
  THOMAS W. ZIKORUS

## 1ST ADDENDUM TO ASSIL, KORNGUTE, LAI ESCROW

Page 2, paragraph three, lines six and seven must state that the One Hundred Million United States Dollar (USD 100,000,000.00) Cash Account at Standard Chartered Hong Kong is a "Reserved/Blocked" Funds Account to be utilized as the justification and basis for the establishment of a Ninety Million United States Dollar (USD 90,000,000.00) Unsecured Cash Line of Credit in accordance to the International Chamber of Commerce established guidelines and publications regarding "Reserved/Blocked" Funds as it applies to the 1974 Hong Kong Consumer Act.

Page 9, Paragraph A regarding the **ESCROW AGENT's** Attorney Client Trust Account shall be changed as follows:

CITIBANK, NEW YORK
111 WALL STREET, NY, NY 10043
FOR THE BENEFIT OF MORGAN STANLEY DEAN WITTER
ACCOUNT NO: ▪▪▪▪▪▪
ACCOUNT NAME: LESTER F. WHALLEY, ATTORNEY TRUST ACCOUNT
ACCOUNT NO: ▪▪▪6691-188
A.B.A NO. 021000089
S.W.I.F.T. CODE: CITI US 33

ESCROW AGENT: _Lester F. Whalley_     DATE 4-28 1999
         LESTER F. WHALLEY
THE FIRST PARTY:

RELIANCE FINANCIAL CORP. _Lyle Howry_    DATE 5-7 1999
         LYLE HOWRY   _by Lester F. Whalley, atty in fct._
THE SECOND PARTY:
ROBERT ASSIL: _[signature]_    DATE 5/10 1999
         ROBERT ASSIL

THE SECOND PARTY:
ALBERT KORNGUTE: _[signature]_    DATE 5/13 1999
         ALBERT KORNGUTE
CASH ACCOUNT HOLDER:

DAVID LAI: _____ DATE _____ 1999
         DAVID LAI
TREASURY REPO FACILITATOR:
VCBC HOLDINGS LTD.
        _____ DATE _____ 1999
         THOMAS W. ZIKORUS

ATTORNEY TRUST ESCROW INSTRUCTIONS        PAGE 13

**SECOND ADDENDUM TO ASSIL, KORNGUTE, LAI ESCROW**

Throughout the above referenced escrow instructions, Guarantee & Reserves, Inc. is inadvertently referred to as an "Insurance" carrier and the Binder is referred to as an "Irrevocable Letter of Insurance Guarantee". By this amendment all references to "insurance" are amended to "surety" and all references to "Insurance Letter of Binder Guarantee" or similar references are amended to read "Surety Letter of Binder Guarantee".

As a matter of clarification concerning paragraphs (1) and (2) at the bottom of page 4 and paragraph (C) at the bottom of page 6 and the top of page 7, the references to the sums TWO HUNDRED FIFTY THOUSAND DOLLARS (USD 250,000.00) in paragraphs (2) and (C), and any other references to such sums, are included and are part of the TWO MILLION DOLLARS (USD 2,000,000.00) set forth in paragraph (1). The total obligation of SECOND PARTIES in this transaction is the TWO MILLION DOLLARS (USD 2,000,000.00).

Paragraph (9) on page 9 is amended to provide that "Any and all fees for performing the duties of the ESCROW AGENT in this matter ..... shall be paid by the parties to this escrow other than SECOND PARTY".

ESCROW AGENT: _____ DATE 5/8 1999
             LESTER F. WHALLEY

FIRST PARTY:
RELIANCE FINANCIAL CORP. _____ DATE 5/8 1999
                   LYLE HOWRY

THE SECOND PARTY:
ROBERT ASSIL: _____ DATE 5/10 1999
                   ROBERT ASSIL

THE SECOND PARTY:
ALBERT KORNGUT: _____ DATE 5/13 1999
                   ALBERT KORNGUTE

CASH ACCOUNT HOLDER:
DAVID LAI _____ DATE _____ 1999
                   DAVID LAI

TREASURY REPO FACILITATOR:
VCBC Holdings, LTD. _____ DATE _____ 1999
                   THOMAS W. ZIKORUS

ATTORNEY  TRUST ESCROW INSTRUCTIONS         PAGE 14

**THIRD ADDENDUM TO ASSIL, KORNGUTE, LAI ESCROW**

SECOND PARTY ALBERT KORNGUTE shall have the right to sell, assign or transfer all his right, title and interest in this escrow agreement to any firm, trust, person or corporation at any time during the term of this agreement, and any assignee shall acquire all of the rights and assume all of the duties said ALBERT KORNGUTE UNDER THIS AGREEMENT.

**ESCROW AGENT:** _____ DATE_____ 1 999
              LESTER F. WHALLEY

**FIRST PARTY:**
**RELIANCE FINANCIAL CORP.**_____ DATE____ 1999
              LYLE HOWRY

**THE SECOND PARTY:**
**ROBERT ASSIL:** _____ DATE_____1999
              ROBERT ASSIL

**THE SECOND PARTY:**
**ALBERT KORNGUTE** _____ DATE 4/13 1999
              ALBERT KORNGUTE

**CASH ACCOUNT HOLDER:**
**DAVID LAI** _____ DATE _____1999
              DAVID LAI

**TREASURY REPO FACILITATOR:**
              _____ DATE _____ 1999
              THOMAS W. ZIKORUS


ATTORNEY  TRUST ESCROW INSTRUCTIONS              PAGE 14

# EXHIBIT B

Dated May 21, 1999 for reference

## LETTER OF ACKNOWLEDGEMENT
## AND INTERIM AMENDMENT TO ESCROW INSTRUCTIONS

The signatories to this Letter of Acknowledgement hereby acknowledge that Mr. Thomas W. Zikorus of VCBC Holdings, Ltd. is making available for the purpose of the transaction referenced and referred to in the document entitled Escrow Instructions dated April 26, 1999, United States Treasuries in the amount of Ten Million United States Dollars (USD 10,000,000.00) in a Morgan Stanley Dean Witter Account in the name of Reliance Financial Corporation, Mr. Albert Korngute, individually, Mr. Herbert Korngute, individually and Mr. Robert Assil, individually, on the following terms and conditions:

1.     That the said Five Hundred Thousand United States Dollars (USD 500,000.00) currently in the Lester F. Whalley Attorney Client Trust Account at Morgan Stanley Dean Witter, remitted to Mr. Whalley's account by wire transfer by Mr. Albert Korngute, be transferred by Lester F. Whalley, Esq. to the VCBC Holdings, Ltd. Account at Morgan Stanley Dean Witter; and;

2.     That the said Five Hundred Thousand United States Dollars (USD 500,000.00) currently in the Lester F. Whalley Attorney Client Trust Account at Morgan Stanley Dean Witter, remitted to Mr. Whalley's account by wire transfer by Mr. Herbert Korngute, be transferred by Lester F. Whalley, Esq. to the VCBC Holdings, Ltd. Account at Morgan Stanley Dean Witter; and;

3.     That the said Five Hundred Thousand United States Dollars (USD) 500,000.00) currently in the Lester F. Whalley Attorney Client Trust Account at Morgan Stanley Dean Witter, remitted to Mr. Whalley's account by wire transfer by Mr. Robert Assil, be transferred by Lester F. Whalley, Esq. to the VCBC Holdings, Ltd. Account at Morgan Stanley Dean Witter.

The signatories hereto further acknowledge that, upon Lester F. Whalley, Esq. providing VCBC Holdings, Ltd. with evidence that the funds referenced in paragraphs 1, 2 and 3 above, VCBC Holdings, Ltd. will immediately instruct Morgan Stanley Dean Witter to transfer Ten Million United States Dollars (USD 10,000,000.00) worth of United States Treasuries to a special account for the collective benefit of Reliance Financial Corp. and Messrs. Albert Korngute, Herbert Korngute and Robert Assil

Further, the Signatories to this Letter of Acknowledgement etc., understand that the First Party and the Second Parties shall be entitled to forty (40) separate payments equal to twenty five percent (25%) of the Face Value of the subject United States Treasuries, with the express understanding that from the first monies paid out of the first two payments the initial investors shall 1) retain sufficient sums to reimburse them for their initial investment monies and 2) shall deposit into the original escrow account of Escrow Agent Lester F. Whalley, the sum of Two Million United States Dollars (USD 2,000,000.00). The remaining thirty eight (38) payments will accrue to the collective benefit of Reliance Financial Corp. and Messrs. Albert Korngute, Herbert Korngute and Robert Assil as follows: 1) One-Third (1/3) to Reliance Financial Corp. and/or its Nominee, 1) One-Third (1/3) to Messers. Albert Korngute and Herbert Korngute, Jointly and or

**LETTER OF ACKNOWLEDGMENT AND INTERIM AMENDMENT TO ESCROW INSTRUCTIONS**
May 21, 1999
Page two, continued.

their Nominee and 3) One- Third to Mr. Robert Assil and/or his Nominee.

Escrow Agent, Lester F. Whalley, is hereby instructed to carry out the terms of this Interim Amendment To his original Escrow Instructions dated April 21, 1999 by the undersigned parties.

The signatories to this Letter of Acknowledgment and Interim Amendment to Escrow nstructions hereby that they have read and understand the terms hereof and agree that a facsimile copy of this document and a facsimile signature thereon shall be construed as valid as the original.

**ESCROW AGENT.** _____ DATE: MAY ___ 1999
       Lester F. Whalley, Esq.

**THE FIRST PARTY:**
**RELIANCE FINANCIAL CORP.** _____ DATE: MAY ___ 1999
       Lyle Howry, CEO

**THE SECOND PARTY:**
**ALBERT KORNGUTE:** _____ DATE: MAY 25 1999
       Albert Korngute. Individually

**THE SECOND PARTY:**
**HERBERT KORNGUTE:** _____ DATE: MAY ___ 1999
       Herbert Korngute, Individually

**THE SECOND PARTY;**
**ROBERT ASSIL:** _____ DATE: MAY 24 1999
       Robert Assil, Individually

**TREASURY REPO FACILITATOR:**
**VCBC HOLDINGS, LTD.:** _____ DATE: MAY ___ 1999
       Thomas W. Zikorus, Director

# EXHIBIT C

# Bill of Exchange
### (Corporate Guaranteed)

No: 0030

| Los Angeles, California | April 23, 1999 | $20,000,000.00 | April 23, 2000 |
|---|---|---|---|
| Place of drawing | Date of Drawing | Amount | Maturity date |

Pay against this Bill of Exchange

To the Order of:   Robrrt Assil / Albert Korngute

The amount of:   Twenty Million U. S. Dollars

Value drawn on:   Boren Foundation

Drawer:   Lyle Howry, Reliance Corp.

Payable at:
The Counter
Wells Fargo Bank
10789 West Pico Blvd.
Los Angeles, California 90064
Account: Boren Foundation
Account Number ████████8184

Boren Foundation

Irving N. Boren
Pres.Chairman:

{ ___ Boren Foundation ___
{ ___ Irving N. Boren ___
(Person executing this document)

SIGNATURE GUARANTEED
(Bank)  ) ___ Wells Fargo Bank ___
(Office) ) ___ Palm Desert, CA. ___

SIGNATURE GUARANTEED
MEDALL CH GUARANTEED

Signature of ___
GUARANTEED
WELLS FARGO BANK, N.A.
LA DESERT #699
By ___
Authorized Signer

**This Bill of Exchange is Transferable**

37

MAY-11-99 TUE 18:44 LESTER F WHALLEY                    P. 02

FROM : JANDJ ENTERPRISES BLUE LION IN PHONE NO. :        Apr. 27 1999 01:21PM P1

04/26/1999 11:00    6197730839         BOREN FOUNDATION           PAGE  01



## Guarantee

KNOW ALL MEN by these presents that the undersigned, Boren Foundation having its registered seat in Cayman Islands, British West Indies shall hold the following assets for the term covering its obligations outstanding and in the event any obligation is not discharged at term from income received, the Foundation shall cause the collateral to be liquidated forthwith to the extent required with any excess due and payable to the Boren Foundation.

This shall confirm with full corporate responsibility that MAGNUS PROPERTIES LIMITED, fully and guarantee payment of the following instruments unconditional & irrevocable Bill of Exchange Numbers; 0030 through 0039 inclusive

To the Order of:  Boren Foundation / Reliance Financial Corp.
The amount of:  Two Hundred Million U.S. Dollars
Due date;  April 26, 2001
Drawer:  Guaranty & Reserves, Inc.
Payable at:  The Counter; Wells Fargo Bank 10789 W. Pico Blvd. Los Angeles California 90064 Account: Boren Foundation, Account Number 0▓▓▓▓▓▓▓

BOREN FOUNDATION
1-1 Camino Arroyo So. Palm Desert, CA. 92260. Ph. (760) 340- 4972 Fax (760) 779-0899

Boren Foundation                          {    Boren Foundation
                                          {    Irving N. Boren
                                          (Person executing this document)

Irving N. Boren
Pres. Chairman                            SIGNATURE GUARANTEED
                          (Bank) )        Wells Fargo Bank
                          (Officer) )     Palm Desert, CA

MAY-11-99 TUE 18:46 LESTER F WHALLEY                    P.03

# SPECIAL MEETING; BOARD OF DIRECTORS

## BOREN FOUNDATION

A special meeting was called to confirm the issuance of ten Bills of Exchanges numbers 0030 through 0039 inclusive in favor of Boren Foundation /Reliance Financial Corporation each for the sum of twenty million U.S. dollars for the overall sum of two hundred million U.S. dollars to be due and payable on April 29, 2000. Lyle Howry, acting as CEO of Reliance Financial Corporation, is empowered to execute all documents required in their placement for the equal beneficial interest of both.

There being a quorum, the motion was made, seconded and unanimously carried.

There being no further business, the meeting was adjourned.

April 28. 1999

_____          _____
President                                          Secretary

From: Christopher Cristiani  1-323-654-4709  To: Al Kompute          Date: 5/11/99  Time: 6:00:14 PM                    Page 1 of 1

      APP-10-99 SAT 01:47 CRISTIANI INT'L INC.      1 213 654 4709      P.05

APR 08 '99  03:11 PM                                                   Page  1

### JAMES D. SERVICE, B.A. (Hons.), LL.B., Q.C.
~~, Ontario L7B 1B6~~
Tel. ~~~~  Fax ~~~~

April 8 1999

Keystone Energy Services Inc.,
~~~~
Los Angeles, California,
90069

Attention Mr. Richard Saxby, C.E.O.

Re: Boren Foundation/Reliance Corp/ $25 Million USD
Bill of Exchange/$250,000.00 USD

Dear Sirs:

In connection with the above transaction please be advised that I hold documentation, appraisals and title documents, as collateral for the Boren Foundation, very substantially more than would be required to be liquidated to meet any default by Boren Foundation.

The Boren Foundation has overall assets totalling more than $2 Billion USD including $694,272,000.00 USD in land in Imperial County California as appraised by a certified M.A.I. and $86,000,000.00 USD In California Mining Claims. The five (5) separate Mining Claims are appraised at $17,200,000.00 USD each and in the event of a default by Boren Foundation I would most likely choose to liquidate one of the Mining Claims.

Sincerely yours,

*James D. Service, Trustee*

1 ⬤ – 9 9 – 0 0 8

| CERTIFIED INVENTORY OF EVIDENCE | | SERIAL NUMBER | | | | | |
|---|---|---|---|---|---|---|---|
| | | 108 1999 CE 448 | | | | | |

| EVIDENCE HELD AGAINST | ☐ SPECIMEN | CASE NO. |
|---|---|---|
| VCBC HOLDINGS INC. ET AL | | 108-777-0236272-S |

OFFICE
NEW YORK FIELD OFFICE

EVIDENCE INVENTORIED BY

SCOTT B. ALSWANG                    7/7/99
SIGNATURE - SPECIAL AGENT           DATE

Madeline Conway                    7/7/99
MADELINE CONWAY                    DATE
SIGNATURE - WITNESS

(P) - Passed
(S) - Seized
(A) - Abroad

DATE OF INVENTORY
06/22/99          PAGE   1   OF   2   PAGES

REVIEWING SUPERVISOR

SAIC CHIP SMITH                    7/7/99
SIGNATURE                          DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:   ☐FSD   ☐CFT.

SIGNATURE - DIVISION                DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| 1 | 06/22/99 | 1 | DEAN WITTER REYNOLDS INC. CHECK NUMBERED 20283977 PAYABLE TO THE UNITED STATES SECRET SERVICE. | $6162.00 |
| 2 | 06/22/99 | 1 | DEAN WITTER REYNOLDS INC. CHECK NUMBERED 20283978 PAYABLE TO THE UNITED STATES SECRET SERVICE. | $145616.00 |
| 3 | 06/22/99 | 1 | DEAN WITTER REYNOLDS INC. CHECK NUMBERED 20283979 PAYABLE TO THE UNITED STATES SECRET SERVICE. | $913969.00 |
| 4 | 06/22/99 | 1 | DEAN WITTER REYNOLDS INC. CHECK NUMBERED 20283980 PAYABLE TO THE UNITED STATES SECRET SERVICE. | $1024900.00 |
| | | | TOTAL ⟶ | $2090647.00 |

UNITED STATES SECRET SERVICE                                    SSF 1544 (03/88)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
MES

| CERTIFIED INVENTORY OF EVIDENCE U.S. SECRET SERVICE | | | SERIAL NUMBER 108 2000 CE 273 | |
|---|---|---|---|---|
| EVIDENCE HELD AGAINST ☐ SPECIMEN | | | CASE NO. 108-777-0236272-S | |
| VCBC HOLDINGS INC   *2000 MAR -8 A 8:19* | | | OFFICE NEW YORK FIELD OFFICE | |
| EVIDENCE INVENTORIED BY   *ASSET FORFEITURE BRANCH 3/3/00* | | | DATE OF INVENTORY 02/28/00   PAGE  1  OF  2  PAGES | |
| MICHAEL MANTYLA SIGNATURE - SPECIAL AGENT   DATE | | | REVIEWING SUPERVISOR | |
| *Denise M Geb* DENISE M. GIBSON SIGNATURE - WITNESS   *3/3/00*   DATE | | | RAFAEL C. FIGUEROA   *3/3/00* SIGNATURE   DATE | |
| *108-99-008* | | | I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:   ☐FSD   ☐CFT. | |
| | | | SIGNATURE - DIVISION   DATE | |

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE FOLLOWING ITEMS ARE THE INTEREST EARNED ON SEIZED DEAN WITTER REYNOLDS INC. ACCOUNT NUMBER ▓▓▓6915-0-274 AND ▓▓▓7277-0-188. | |
| 1 | 02/28/00 | 1 | DEAN WITTER REYNOLDS INC. CHECK NUMBER 23712395 PAYABLE TO THE UNITED STATES SECRET SERVICE. | $690.45 |
| 2 | 02/28/00 | 1 | DEAN WITTER REYNOLDS INC. CHECK NUMBER 23712393 PAYABLE TO THE UNITED STATES SECRET SERVICE. | $2751.81 |
| | | | TOTAL ⟶ | $3442.26 |

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
CYK



**DEAN WITTER REYNOLDS INC.**

20283979

1-5/210
472 CITIBANK, N.A.
NEW YORK, NY

DATE 6-21-99    ACCOUNT NUMBER    6915-0    AMOUNT $913,969.00

PAY TO THE ORDER OF    $913,969 AND 00 CTS

UNITED STATES SECRET SERVICE

DEAN WITTER REYNOLDS INC.

BY

VOID SIX MONTHS AFTER ISSUE DATE

---

**DEAN WITTER REYNOLDS INC.**

20283977

1-5/210
472 CITIBANK, N.A.
NEW YORK, NY

DATE 6-21-99    ACCOUNT NUMBER    6691-0    AMOUNT $6,162.00

PAY TO THE ORDER OF    $6,162 AND 00 CTS

UNITED STATES SECRET SERVICE

DEAN WITTER REYNOLDS INC.

BY

VOID SIX MONTHS AFTER ISSUE DATE

**DEAN WITTER REYNOLDS INC.**

1-8/210
472   CITIBANK, N.A.
NEW YORK, NY

20283980

108-99-008

| DATE | 6-21-99 | ACCOUNT NUMBER | ▓▓▓▓7277-0 | AMOUNT | $1,024,900.00 |

PAY TO THE ORDER OF    DEAN WITTER REYNOLDS   #I024,900 AND 00 CTS

UNITED STATES SECRET SERVICE    DEAN WITTER REYNOLDS INC.

BY

VOID SIX MONTHS AFTER ISSUE DATE

---

**DEAN WITTER REYNOLDS INC.**

1-8/210
472   CITIBANK, N.A.
NEW YORK, NY

20283978 ✓

108-99-008

| DATE | 6-21-99 | ACCOUNT NUMBER | ▓▓▓▓6093-0 | AMOUNT | $145,616.00 |

PAY TO THE ORDER OF    DEAN WITTER REYNOLDS   #I45,6I6 AND 00 CTS

UNITED STATES SECRET SERVICE    DEAN WITTER REYNOLDS INC.

BY

VOID SIX MONTHS AFTER ISSUE DATE

REDACTED



REDACTED