UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
ROBERT ASSIL, :
:
                    *Plaintiff,* :
:
  -against- :
                                                                                                             07 Civ. 11037 (DAB)
:
UNITED STATES OF AMERICA, :
:
                    *Defendant.* :
:
------------------------------------------------------------------X

---

### PLAINTIFF ROBERT ASSIL'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S RULE 41(g) MOTION TO DISMISS

---

                                        LAW OFFICES OF JEFFREY LICHTMAN
                                        750 LEXINGTON AVENUE
                                        15TH FLOOR
                                        NEW YORK, NEW YORK 10022

                                        LAW OFFICE OF MARC FERNICH
                                        750 LEXINGTON AVENUE
                                        15TH FLOOR
                                        NEW YORK, NEW YORK 10022

                                        *Attorneys for Plaintiff Robert Assil*

*On the Memorandum*:

    Marc Fernich, Esq.

# **TABLE OF CONTENTS**

STATEMENT .................................................................... 1

BACKGROUND ................................................................. 1

ARGUMENT .................................................................... 2

    POINT I - ASSIL'S MOTION IS TIMELY; ALTERNATIVELY, FACTUAL
    QUESTIONS AS TO ITS TIMELINESS PRECLUDE DISMISSAL ............... 2

    POINT II - ASSIL HAS *PRIMA FACIE* STANDING TO PURSUE THIS ACTION ... 6

CONCLUSION .................................................................. 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
ROBERT ASSIL,                                                :
:
                              *Plaintiff,*    :
:
  -against-                                                  :
:    07 Civ. 11037 (DAB)
:
UNITED STATES OF AMERICA,                    :
:
                            *Defendant.*    :
:
------------------------------------------------------------X

## PLAINTIFF ROBERT ASSIL'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S RULE 41(g) MOTION TO DISMISS

### STATEMENT

Robert Assil respectfully opposes the government's motion to dismiss his motion for return of seized property under Fed. R. Crim. P. 41(g).

### BACKGROUND

The relevant facts, taken as true for dismissal purposes,[1] appear in Assil's Dec. 5, 2007 complaint.

---

[1]     *See, e.g., Riggs v. City of Albuquerque*, 916 F.2d 582, 584 (10th Cir. 1990); *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## ARGUMENT

### POINT I

### ASSIL'S MOTION IS TIMELY; ALTERNATIVELY, FACTUAL QUESTIONS AS TO ITS TIMELINESS PRECLUDE DISMISSAL

Citing *Bertin v. U.S.*, 478 F.3d 489 (2d Cir. 2007), and *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001), the government contends that Assil's motion is barred by the applicable six-year statute of limitations, which purportedly commenced with Lester Whalley's May 17, 2001 sentencing some six-and-a-half years earlier. *See* Government Memorandum of Law in Support of Dismissal ("Mem.") at 6-7. But as the government concedes (*id.*), *Bertin* and *Rodriguez-Aguirre* involved forfeiture claimants who had also been indicted as criminal defendants. *See Bertin*, 478 F.3d at 494 ("Bertin was sentenced (and judgment entered) on December 4, 1992; therefore his Rule 41(g) motion accrued on the same day."); *Rodriguez-Aguirre*, 264 F.3d at 1200, 1213 (where claimants sought return of property "following their [criminal] convictions," limitations period "beg[an] to run at the conclusion of the government's criminal proceedings against the[m]").

Where, as here, the claimant is **not** charged in related criminal proceedings and "no forfeiture proceedings were conducted," it is settled that Rule 41(g)'s six-year clock starts "at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action." *Polanco v. U.S. DEA*, 158 F.3d 647, 654 (2d Cir. 1998) (citation omitted) (cited approvingly in *Bertin*, 478 F.3d at 493). In these circumstances, as the Second Circuit pointedly "appreciate[s]," the claimant "may sometimes have a total of **eleven years** post-seizure to begin complaining about the obvious and overt deprivation of his property." *Id.* (emphasis supplied). This result is fair and

2

sensible because an unindicted claimant "cannot be expected to know the government's intentions, and will naturally be hesitant to press the [return of property] question by focusing on himself the attentions of the prosecutor." *Bertin*, 478 F.3d at 493-94 (citing *Polanco*, 158 F.3d at 649).

Here, it is undisputed that the funds at issue were seized on or about June 18, 1999 (Mem. at 3) and Assil filed his Rule 41(g) motion on Dec. 5, 2007, well within the 11 years allowed by *Bertin* and *Polanco*. It follows that the motion is timely brought.

Alternatively, even if the limitations period did commence with Whalley's sentencing – and as we have just explained, it did not – factual questions surrounding Assil's entitlement to equitable tolling preclude dismissal on the pleadings. *See generally, e.g., Bertin*, 478 F.3d at 494 n.3. We make this claim for several reasons.

**First**, it is undisputed that Assil received no notice of "**any** forfeiture proceedings" – "administrative[,] judicial" or otherwise – that would have triggered his duty to contest the property's confiscation and demand its prompt return. Complaint ¶ 10 (emphasis supplied); *see* Mem. at 4 ("The Government did not seek civil forfeiture"). Nonetheless, counsel represent that they made repeated telephonic efforts to inquire as to the money's status, but were unable to obtain any information from the government – presumably because the "case file and evidence" were destroyed in the Sept. 11, 2001 terror attacks. *See* affirmation of Linda E. Canfield, dated Feb. 4. 2008 ("Can. Aff.), ¶ 2.

**Second**, and more fundamentally, the government offers no evidence that Assil was actually notified of the third-party sentencing that allegedly disbursed some of the seized funds as restitution[2]

---

[2] *See* Mem. at 3-4. By defendant's own account, roughly $64,000 of the almost $2.1 million seized was **not** disbursed as restitution and apparently remains in government custody. *Id.* Contrary to defendant's suggestion (*see id.* at 9 n.5), Assil's motion encounters no sovereign immunity problem as to that money at least. *See Diaz v. U.S.*, No. 06-5301-cv, 517 F.3d 608, 2008
(continued...)

3

– much less that he independently knew or should have known about another person's court proceeding. *Cf. Polanco*, 158 F.3d at 654 (cause of action accrues when claimant "discover[s] or has reason to discover that his property ha[s] been [improperly] forfeited"). Indeed, the government does not even contend that such notice was ever given. To the contrary, while similarly situated investor

---

²(...continued)
WL 495653 (2d Cir. Feb. 26, 2008).

     At a minimum, factual questions as to the source, disposition and location of the $64,000 preclude summary dismissal on immunity grounds. *Cf., e.g., Durham v. Tempas*, No. 07-2057 (JBS), 2007 WL 4226067, at *5 (D. N.J. Nov. 26, 2007) (41(g) motion proceeds "[b]ecause it is not apparent from the pleading that the seized funds are not actually available for return"); *Vitrano v. U.S.*, No. 06 Civ. 6518 (JGK), 2007 WL 2850498, at *4 (S.D.N.Y. Oct. 1, 2007) ("issue[s] of fact" as to government's current possession of seized currency precluded summary judgment and warranted evidentiary hearing). As the Third Circuit instructed in *U.S. v. Chambers*:

> If ... the government asserts that it no longer has the property sought, the District Court **must** determine, in fact, whether the government retains possession of the property; if it finds that the government no longer possesses the property, the District Court **must** determine what happened to the property. The District Court **must** hold an evidentiary hearing on any disputed issue of fact necessary to the resolution of the motion....
>
> ... If the District Court concludes that the government's actions in either regard were not proper, it **shall** determine what remedies are available.

192 F.3d 374, 378 (3d Cir. 1999) (citations omitted) (emphasis supplied); *accord, e.g., U.S. v. Albison*, 356 F.3d 278, 284 (3d Cir. 2004) (reinstating and remanding 41(g) motion where district court held seized property unavailable without determining what happened to it). *A fortiori*, these directives are doubly applicable where, as here, the government does not even deny its continued possession of over $64,000 in seized funds that is otherwise unaccounted for. *Cf., e.g., Mendez v. U.S.*, Nos. S294 CR 466 (JFK), 99 Civ. 3496 (JFK), 2003 WL 21673616, at *2 (S.D.N.Y. July 16, 2003) (government "must do more than state without documentary support that it no longer possesses the property at issue") (citing *Chambers*). At any rate, the government's possession or non-possession of confiscated property speaks to the ultimate relief available, and is not a jurisdictional basis for dismissal on the pleadings. *See generally Mora v. U.S.*, 955 F.2d 156, 159 (2d Cir. 1992) (collecting cases).

Albert Korngute[3] seems to have recovered some $1 million in restitution as a putative victim of Whalley's scheme,[4] it appears that Assil was never informed of his own opportunity to seek commensurate relief[5] – a plain transgression of the Mandatory Victims Restitution Act (MVRA). *See* 18 U.S.C. §§ 3664(d)(1) (prosecutor **shall** consult with all identified victims to extent practicable); *id.* §§ 3664(2)(A)-(B) (probation officer **shall** notify all identified victims, to extent practicable, of opportunity to submit loss information and date of sentencing, providing affidavit for that purpose).

In sum, this is a situation in which the government's own failure of notice and apparent MVRA violations prevented Assil from timely establishing his status as a victim, and contemporaneously pursuing restitution, in the proper manner and forum. Dismissal based on a third-party sentencing, of which there is no evidence Assil was even aware, would thus be manifestly unjust. At a minimum, open questions concerning (A) the government's MVRA compliance, (B) the existence, adequacy and timing of any ostensible notice – of both Whalley's sentencing and Assil's right to participate – and (C) Assil's own knowledge of the proceeding – actual, constructive or otherwise – preclude a lateness finding at this preliminary stage. *See, e.g., U.S. v. Wright*, 361 F.3d 288, 289-90 (5th Cir. 2004) (vacating limitations dismissal where record unclear as to when claimant had "reasonable inquiry notice" for equitable tolling purposes); *U.S. v. Ritchie*, 342 F.3d 903, 911 (9th Cir. 2003) (dismissal inappropriate where "undisputed facts" insufficient to determine existence and adequacy of "actual notice"); *cf., e.g., Rodriguez-Aguirre*, 264 F.3d at 1202-03, 1214-15 (41(g)

---

[3]   *See* Mem. at 2-3.

[4]   *See* Canfield Aff. ¶ 6.

[5]   *See* Mem. at 3 ("Assil was not included in the court's restitution order.") (citations omitted).

motion improperly dismissed where record insufficient to determine timeliness given "dearth of information" as to correct "accrual date"); *Polanco*, 158 F.3d at 649, 654 (reversing dismissal where record insufficient to ascertain when limitations period began).

## POINT II

### ASSIL HAS *PRIMA FACIE* STANDING TO PURSUE THIS ACTION

Relying chiefly on a pair of decade-old district court opinions[6] – one unpublished – the government argues that Assil "lacks [Article III] standing" as "an individual who deposit[ed] funds into the bank account of a third person." Mem. at 8. We disagree.

At the outset, we note that the standing hurdle at this "preliminary juncture" is quite low. *Rodriguez-Aguirre*, 264 F.3d at 1204. As elaborated in *Rodriguez-Aguirre*, a case invoked by the government itself, Assil

> ["]need **not** prove the full merits of h[is] underlying claim. All that needs to be shown is a **facially colorable** interest in the proceedings sufficient to satisfy the case-or-controversy requirement and prudential considerations defining and limiting the role of the court." *U.S. v. 116 Emerson St.*, 942 F.2d 72, 78 (1st Cir. 1991) (citations and quotations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations and internal quotations omitted) (alteration in original).

---

[6] *U.S. v. All Funds on Deposit in the Name of Khan*, 955 F. Supp. 23 (E.D.N.Y.), *aff'd*, No. 97-6083, 129 F.3d 114, 1997 WL 701366 (2d Cir. Nov. 10, 1997) (unpublished); *U.S. v. $79,000 at Bank of NY*, No. 96 Civ. 3493 (MBM), 1996 WL 648934 (S.D.N.Y. Nov. 7, 1996).

> In a Rule 41([g]) proceeding, a claimant must allege "a **colorable** ownership, possessory or security interest in **at least a portion** of the defendant property" to satisfy the standing requirements. *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). When the claimant alleges such an interest in the seized property, the standing requirements are satisfied "because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed **at least in part** by the return of the seized property."

264 F.3d at 1204 (emphasis supplied); *accord Torres v. $36,526.80 U.S. Currency*, 25 F.3d 1154, 1158 (2d Cir. 1994) (quoting *116 Emerson St.* to similar effect); *cf. Nexus Holdings, Inc. v. DAFCAN Finance, Inc.*, 531 F. Supp. 2d 839, 843 (S.D. Ohio 2008) (for standing purposes, court "need not determine that Nexus's claim to return of the stock is actually meritorious, but simply that Nexus has a claim which differentiates it from an unsecured creditor").

For at least three reasons, Assil easily carries this "*prima facie*" burden. *Torres*, 25 F.3d at 1159; *cf. U.S. v. Contents of Accounts 208-06070 and 208-06068-1-2*, 847 F. Supp. 329, 333 (S.D.N.Y. 1994) ("genuine issue of material fact" as to standing precludes summary forfeiture of two bank accounts) ("*Contents*").

**First**, as *Rodriguez-Aguirre* observes – and as the government itself acknowledges – "a claimant may demonstrate standing in a forfeiture action by showing some ownership or possessory interest in the property at issue." Mem. at 7-8 (citing *U.S. v. Cambio-Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999)) (additional citation and parenthetical quotation omitted). In turn, such an interest may

7

be proven by, for example, "actual possession, dominion, control, title, or financial stake,"[7] as well as "beneficial ownership." *Torres*, 25 F.3d at 1158.

Here, the government's own documentary evidence establishes that Assil consigned funds to Whalley under specific terms and conditions, for a limited and discrete purpose. More precisely, he invested $200,000 in a putative attorney trust account under a purported escrow agreement naming Whalley as trustee/escrow agent, and **guaranteeing** the money's full return with interest pursuant to an "irrevocable insurance guarantee." *See, e.g.,* affidavit of Thomas E. Atkinson, Jr., sworn to June 18, 1999 ("Atkinson Aff."), at 6-7, 10-12.

On these uncontested facts, it is clear that Assil retained beneficial ownership of – and ultimate dispositional power over – the invested funds, if not actual title to them. In contrast, Whalley merely held them temporarily, in a nominal or representative capacity. As Judge Altimari wrote in loosely analogous circumstances:

> [I]t is **undisputed** that [attorney] Nachamie did **not** have title to the deposited funds, which **belonged to her *clients*....** [T]he operation of an IOLA [New York attorney trust account] does **not** transfer title to the funds from the client to the attorney or **in any way restrict the client's access to the funds**. The funds are in escrow and are to be **returned to the attorney's clients**. ... [T]he account's principal was held for Nachamie's clients, and ... these funds were to be returned intact.

---

[7] *Contents*, 847 F. Supp. at 333 (quoted in *$79,000*, 1996 WL 648934, at *3, and *Khan*, 955 F. Supp. at 26).

8

*People's Westchester Savings Bank v. FDIC*, 961 F.2d 327, 333 (2d Cir. 1992) (Altimari, J., dissenting) (emphasis supplied).[8]

In other words, it is "undisputed" that Assil "transferred" the money in a "conditional rather than absolute fashion," Whalley rightfully retaining it only insofar as he complied with the precise provisions of the purported escrow agreement – that is, only if he invested the funds in the particular manner promised, returning them intact with interest as irrevocably **guaranteed**. *Nexus Holdings, Inc.*, 531 F. Supp.2d at 843 ("defendants were entitled to retain the shares of stock only if they funded the loan, and were entitled to sell the[m] ... only if Nexus defaulted"). When Whalley did neither, Assil – "access to the funds" uninhibited, *People's Westchester*, 961 F.2d at 333 (Altimari, J., dissenting) – was entitled to demand, and get, their immediate repossession. *Cf. U.S. v. Five Hundred Thousand Dollars*, 730 F.2d 1437 (11th Cir. 1984) (depositors' ability to direct account holder to issue cashier's checks to designees established standing, illustrating dominion and control over funds). And, in turn, that unqualified right affords Assil standing to seek corresponding relief from the government as Whalley's successor, having stepped in and frozen the money in the interim. As the *Nexus Holdings* court put it:

> The undisputed facts ... indicate that the loan was never funded, so that the pre-condition for the defendants' retention of the stock was not met. Consequently, with respect to the stock remaining in the account [subsequently seized by the government], Nexus has a valid interest in the return of that stock which goes beyond th[at] of a mere unsecured creditor...

---

[8] The majority rejected Judge Altimari's ultimate conclusion: that this scenario created a "special account" giving rise to a bailment relationship between the bank and the attorney-account holder. But it did **not** dispute his characterization of the legal relationship between the account holder and her depositors.

9

531 F. Supp. 2d at 843; *contrast Khan*, 955 F. Supp. at 27 (claimants who deposited funds in seized accounts of money transmitters for permanent disbursement to others – rather than **guaranteed** return to themselves – relinquished dominion, control and dispositional power over funds, and therefore lacked standing); *$79,000*, 1996 WL 648934, at *4 (same as to claimants who deposited money in third-party account for overseas distribution to others; claimants, unlike Assil, "do **not** argue that they had dominion or control over ... the funds deposited," or any "power to direct the[ir] disposition") (citation and internal quotes omitted) (emphasis supplied).

**Second**, and more fundamentally, Assil makes a "*prima facie* showing" – on the undisputed documentary record submitted by the government itself – that he is "the beneficiary of a constructive trust"[9] over the monies he consigned to Whalley "and, therefore, has [Rule 41] standing to" seek their return. *Coluccio*, 51 F.3d at 340; *accord Torres*, 25 F.3d at 1157-60 (constructive trust in seized assets confers standing to contest their forfeiture); *$79,000*, 1996 WL 648934, at *6 (recognizing Second Circuit rule that "an equitable title to property, such as through a constructive trust," suffices to "satisfy standing requirements in forfeiture proceedings"). We make this claim for the following reasons:

    A.    Assil had the necessary "confidential or fiduciary relationship"[10] with Whalley in that he (i) deposited money in a putative attorney trust account under a purported escrow agreement naming Whalley as trustee/escrow agent, and (ii) actually signed a supposed confidentiality agreement

---

[9] The elements of a constructive trust under New York law are "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *U.S. v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995) (collecting cases); *accord Torres*, 25 F.3d at 1158 (similar).

[10] *Coluccio*, 51 F.3d at 340.

in connection with the alleged investment.[11] *See, e.g., U.S. v. Schwimmer*, 968 F.2d 1570, 1579, 1583 (2d Cir. 1992) (benefit plan manager a union fiduciary for constructive trust purposes); *People's Westchester*, 961 F.2d at 331-32 (lawyer maintaining trust account acts as agent and fiduciary for depositor clients in a "relation of trust"); *cf. Nexus Holdings, Inc.*, 531 F. Supp. 2d at 843 (implicitly finding confidential relationship between collateral holder and prospective borrower under Ohio law); *contrast Khan*, 1997 WL 701366, at **2 (claimants concededly lacked confidential relationship with unlicensed money remitter).

      B.    Assil transferred the $200,000 in reliance on Whalley's ostensible contractual promise – purportedly secured by an irrevocable insurance **guarantee** – to fully "reconvey" the money. *Torres*, 25 F.3d at 1158-59 (wife transferred loan proceeds in reliance on husband's agreement that CD acquired with them was hers and proceeds "would be reconveyed to her" when it matured); *Coluccio*, 51 F.3d at 340 ("unstated but mutual assumption" that money posted to secure son's cost bond "would be returned" to mother); *Nexus Holdings, Inc.*, 531 F. Supp. 2d at 843 (implicitly finding, under Ohio law, that prospective lender promised to return collateral if it failed to fund loan, and not to liquidate collateral unless borrower defaulted).

      C.    The government, having subsequently confiscated the $200,000, has been unjustly enriched by Whalley's failure to return the money as expressly promised and irrevocably guaranteed. *See Torres*, 25 F.3d at 1159 & n.3 ("The government's forfeiture forced a breach of the[] promise [to return proceeds to claimant] that may result in a potentially unjust enrichment of the **government** (and commensurate unjust impoverishment of [claimant]) if [she] is denied standing to contest the forfeiture"; since the cases do not "require that the *transferee* be the person who is unjustly

---

[11]    *See, e.g.,* Atkinson Aff. at 9, 12.

enriched," constructive trust may be found "even though it is the **government**, not the transferee ..., that may be unjustly enriched") (additional footnote omitted) (bold emphasis supplied); *accord Coluccio*, 51 F.3d at 340 ("justice [may] demand[] that a constructive trust be erected to prevent the **[g]overnment** from retaining an interest in a cost bond for which [claimant] advanced funds with the implicit expectation that her money would be returned") (emphasis supplied).

D. Contrary to the government's assertion (*see* Mem. at 8-10), there is at least a factual question whether Assil has "viable"[12] recourse against the 74-year-old Whalley – and hence an **adequate** legal remedy – where Whalley (i) surrendered all rights to any of the seized funds, including Assil's, to the government at sentencing as part of a $1.28 million restitution obligation; (ii) went to federal prison for 27 months; (iii) gave up his law license, resigned from the bar and shut down his practice as a result of his conviction, ending his career and leaving him with no "opportunity to maintain a professional livelihood"; and (iv) has or had a very sick wife requiring costly medical care.[13] *See U.S. v. Ribadeneira*, 920 F. Supp. 553, 556 (S.D.N.Y. 1996) (doubting the "adequacy, practically speaking, of the option of filing claims directly against a defunct institution whose assets are under government control"), *aff'd*, 105 F.3d 833 (2d Cir. 1997); *contrast $79,000*, 1996 WL 648934, at *6 (viable fraud and contract action against currency exchange and its principal for inducing deposits in third-party account).

E. Last but not least, we reiterate that other Whalley investors, including similarly situated victim Albert Korngute, received full restitution from the seized funds at Whalley's sentencing, exhausting all but $64,000 of the $2.1 million impounded by the government. Yet, by

---

[12] *$79,000*, 1996 WL 648934, at *6.

[13] *See* Lester Whalley sentencing transcript, dated May 17, 2001, at 7-22.

12

failing to apprise Assil of the sentencing and his own opportunity to participate, in direct contravention of the MVRA, the government prevented Assil from timely establishing **his** status as a victim, exercising and vindicating his statutory rights, and sharing in the recovery – indeed, from obtaining any reimbursement at all. A constructive trust, classic equitable relief,[14] is uniquely suited to remedy this unfairness.

**Third**, and finally, to the extent Assil beneficially owned the funds with Whalley merely holding them nominally, he also may have standing under New York bailment cases "recogniz[ing] ownership in persons other than owners of record." *Torres*, 25 F.3d at 1159 n.5. *See, e.g., Ryen v. Terry (In re Terry)*, 56 B.R. 713, 715 (Bankr. W.D.N.Y. 1986) (finding bailor-bailee relationship between bankruptcy trustee and debtor who deposited $19,000 in mother's bank account; "[u]nder the bailment, the debtor did not transfer her equitable nor beneficial interests in those funds to her mother"); *contrast Khan*, 1997 WL 701366, at **2 (no bailment where, unlike here, no evidence funds personally delivered to money remitters were ever deposited in seized bank accounts); *$79,000*, 1996 WL 648934, at *5-*6 (same where, unlike here, claimants had no contractual arrangement with first party, and second party never physically possessed or maintained seized funds).

Under any or all of these three theories – actual ownership, constructive trust and/or bailment – Assil has ample *prima facie* standing to pursue this action.

---

[14] *See generally, e.g., Coluccio*, 51 F.3d at 340; *Torres*, 25 F.3d at 1158; *Khan*, 1997 WL 701366, at **2.

## CONCLUSION

For the reasons stated – Assil has *prima facie* standing to bring this timely motion and no adequate remedy at law – the Court should deny dismissal and let the case proceed to discovery and trial.

Dated:      New York, New York
            April 7, 2008

                                    Respectfully submitted,

                            BY:     _____
                                    **JEFFREY LICHTMAN (JL6328)**

                                    LAW OFFICES OF JEFFREY LICHTMAN
                                    750 LEXINGTON AVENUE, 15TH FLOOR
                                    NEW YORK, NEW YORK 10022
                                    (212) 581-1001

                            BY:     _____
                                    **MARC FERNICH (MF9819)**

                                    LAW OFFICE OF MARC FERNICH
                                    750 LEXINGTON AVENUE, 15TH FLOOR
                                    NEW YORK, NEW YORK 10022
                                    (212) 446-2346

                                    *Attorneys for Plaintiff Robert Assil*

*On the Memorandum*:

    Marc Fernich, Esq.

14