UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT ASSIL,                              :
                                           :
                    Plaintiff,             :
                                           :
        -v.-                               :        07 Civ. 11037 (DAB)
                                           :
UNITED STATES OF AMERICA,                  :
                                           :
                    Defendant.             :
                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF ROBERT ASSIL'S RULE 41(g) MOTION




                                    MICHAEL J. GARCIA
                                    United States Attorney
                                    Southern District of New York
                                    Attorney for the United States
                                            of America



ANNA E. ARREOLA
Assistant United States Attorney
        - Of Counsel -

**TABLE OF CONTENTS**

DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.   Plaintiff Fails to Show That His Motion Is Timely. . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.    The Statute of Limitations Has Expired.. . . . . . . . . . . . . . . . . . . . . . . 1

        B.    Equitable Tolling Is Not Warranted.. . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.   Plaintiff Fails To Establish Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Assil Did Not Have Dominion or Control Over the Funds. . . . . . . . . . . . 7

        B.    Assil Is Not Entitled to a Constructive Trust. . . . . . . . . . . . . . . . . . . . 9

        C.    Assil Has Not Shown the Existence of a Bailment. . . . . . . . . . . . . . . . 11

    III.   Plaintiff Has Adequate Remedies At Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The Government respectfully submits this reply memorandum of law in further support of

its motion to dismiss plaintiff Robert Assil's Rule 41(g) motion for return of property.  In its brief

in support of the motion to dismiss, the Government showed that Assil's motion should be dismissed

because (1) it is untimely, (2) Assil does not have standing, and (3) Assil has an adequate remedy

at law.  In responding to the Government's motion, Assil relies primarily upon conclusory, unsworn

allegations by counsel and arguments unsupported by legal authority.  For the reasons explained

below, his arguments are meritless and the Government's motion to dismiss should be granted.[1]

## DISCUSSION

### I.    Plaintiff Fails to Show That His Motion Is Timely

As explained in the Government's opening brief, Assil filed his motion at least six months

after the six-year statute of limitations expired.  Assil disputes when the limitations period began to

run and, in the alternative, argues that he is entitled to equitable tolling.  His arguments fail.

### A.    The Statute of Limitations Has Expired

Assil first argues that his cause of action did not accrue at the time of Whalley's sentencing,

despite the fact that the sentencing court ordered, at the sentencing, that the funds seized from the

accounts be used to pay the victims listed in the restitution order.  Assil's argument is based upon

---

[1]

"Gov't Mem." denotes the Government's "Memorandum of Law in Support of its Motion to Dismiss Plaintiff Robert Assil's Rule 41(g) Motion," dated February 4, 2008.  "Pl. Mem." denotes Plaintiff's "Memorandum Opposing Dismissal," dated April 7, 2008.

"Arreola Decl." refers to the Declaration of Anna E. Arreola, dated February 4, 2008, and "Canfield Aff." refers to the Affirmation of Special Agent Linda E. Canfield of the United States Secret Service, also dated February 4, 2008, both of which were submitted in support of the Government's motion to dismiss.

a misreading of Second Circuit precedent governing when a Rule 41(g) motion begins to accrue.

As explained below, under *Bertin v. United States*, 478 F.3d 489 (2d Cir. 2007), the six-year

limitations period began to run when Assil discovered, or had reason to discover, the fate of the

seized properties.

In *Bertin*, the Second Circuit decided, among other things, which statute of limitations

governs Rule 41(g) motions and when a cause of action under Rule 41(g) begins to accrue.  The

Court first held that the six-year statute of limitations set forth in 28 U.S.C. § 2401 applies to Rule

41(g) motions that are brought after the termination of criminal or civil forfeiture proceedings.  *Id.*

at 492-93.  The Second Circuit then turned to the issue of when a Rule 41(g) motion begins to

accrue, noting that "[w]hen property is seized and not returned or forfeited, 'the claimant knows that

he has a present right to its return, and shouldn't be permitted to postpone his request for its return

indefinitely.'"  *Id*. at 493 (quoting *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004)).

Consistent with this principle, the Second Circuit held that "a Rule 41(g) motion accrues when the

party seeking return of his property 'discovered or had reason to discover that his property' was

improperly seized."  *Id.* (quoting *Polanco v. U.S. Drug Enforcement Administration*, 158 F.3d 647,

654 (2d Cir. 1998)).

Pursuant to this holding, the Second Circuit drew a bright line for determining when the

statute of limitations begins to accrue in situations where there is a related criminal proceeding in

which the claimant can seek the return of property.  The Court concluded:

> [W]e hold that where . . . there has been a related criminal proceeding but no civil forfeiture
> proceeding, the cause of action accrues at the end of the criminal proceeding during which
> the claimant could have sought the return of his property by motion, but neither sought such
> return nor received his property.  In contrast, where there has been no related criminal
> proceeding--as in *Polanco*--the claimant cannot be expected to know the government's
> intentions, and will naturally be hesitant to press the question by focusing on himself the
> attentions of the prosecutor.

2

*Id.* at 493-94 (internal citations omitted).

Here, Assil "discovered or had reason to discover" the fate of the seized properties at the time of Whalley's sentencing, when the court ordered that the seized properties be used to pay the victims listed in the court's restitution order.  (*See* Arreola Decl. Ex. B at 16-17 (Whalley sentencing transcript)).  Moreover, under *Bertin*'s bright-line rule, Whalley's criminal case constituted a related criminal proceeding during which plaintiff could have pursued his claim for the property.  Specifically, Assil could have raised his claim by petitioning the court for an amended restitution order, pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A *et seq.*[2]  Accordingly, under *Bertin*, Assil's claim began to accrue at the time of Whalley's sentencing.  Because Assil did not file his motion until more than six years after the entry of Whalley's judgment and conviction order, his motion is untimely.  (*See* Gov't Mem. at 6-7).

In a futile attempt to distinguish *Bertin*, Assil argues that, because he was never indicted, there was no related criminal proceeding during which he could have asserted his claim.  This argument is meritless.  The fact that Assil was never indicted does not alter the fact that Assil could have pursued his claim in the criminal proceeding by petitioning the court for an amended restitution order.  Moreover, the *Bertin* decision made clear that "a Rule 41(g) motion accrues when the party seeking return of his property 'discovered or had reason to discover that his property' was improperly seized."  *Id.* at 493.  Here, Assil had reason to discover the fate of the seized properties when the

---

[2]    The MVRA permits a court to modify a restitution order, upon the request of a victim, if additional victims and losses are identified after the original restitution order.  18 U.S.C. §§ 3664(d)(5) and (o).  *See also United States v. Zakhary*, 357 F.3d 186, 193 (2d Cir. 2004) (a district court's determination of identifiable victims and their losses more than ninety days after sentencing, and therefore outside the period prescribed by 18 U.S.C. § 3664(d)(5), will be deemed harmless error to the defendant unless he can show actual prejudice from the omission).

The Government does not address the merits of Assil's claim that he was a victim entitled to restitution.

3

court ordered that they be used to pay the restitution order. *See Sims*, 376 F.3d at 709 ("If the owner

of the seized property happens to be someone other than the defendant, the period will run from

when the person becomes aware or should become aware that the criminal proceedings have

concluded.").[3]

Assil further alleges (through unsworn statements by counsel) that he was never informed

know about Whalley's sentencing or the restitution order. (Pl. Mem. at 3-5).  However, as discussed

in the next section, Assil's purported ignorance does not justify equitable tolling.  In any event, this

allegation is simply not credible.  Assil had six years in which to learn about these events—both of

which are publicly listed on the criminal docket and readily accessible on the Electronic Case Filing

("ECF") system for the Central District Court of California (available at ecf.cacd.uscourts.gov). (*See*

Arreola Decl. Exs. A & C (criminal docket and judgment for *United States v. Whalley*, No. 00 Crim.

801)).[4]

Accordingly, under  *Bertin*, Assil's claim began to accrue at the time of Whalley's

---

[3]     Assil asserts that, when there are no related criminal proceedings in which a claimant can move for the return of property, a claimant may have up to eleven years after property is seized to file a claim. (Pl. Mem. at 2-3).  His argument is based upon a dictum in *Polanco*, 158 F.3d 647, which concerned claims against the Government made pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 (*Polanco* did not involve a Rule 41(g) motion).  There, the Second Circuit decided that, when there is neither a related criminal proceeding nor a civil forfeiture proceeding, a claim for property begins to accrue at the end of the five-year limitations period during which the government is permitted to bring a civil forfeiture action. *Id.* at 654.  The Court noted, in dicta, that "because a claimant has six years in which to file his claim after it accrues, the claimant may sometimes have a total of eleven years post-seizure to begin complaining about the obvious and overt deprivation of his property." *Id.*  This Court does not need to address whether the dictum in *Polanco* extends to Rule 41(g) motions.  As explained above, this case is distinguishable from *Polanco* because, here, there was a related criminal proceeding during which Assil could have asserted his claim.

[4]     Quoting *Bertin*, 478 F.3d at 493-94, Assil claims that he "cannot [have been] expected to know the government's intentions, and [was naturally] hesitant to press the question by focusing on himself the attentions of the prosecutor." (Pl. Mem. at 3).  However, the Government made its intentions known at Whalley's sentencing, during which the Government agreed not to seek criminal forfeiture and the judge ordered that the seized monies be used to pay to the victims listed in the court's restitution order. (Arreola Decl. Ex. B at 16-17).

sentencing, when the court ordered that the seized properties be used to pay the restitution order. Because Assil did not file his Rule 41(g) motion until more than six years later, his motion is untimely.

**B.    Equitable Tolling Is Not Warranted**

In order to qualify for equitable tolling, a plaintiff must show that "he pass[ed] with reasonable diligence through the period [he] seeks to have tolled." *Polanco*, 158 F.3d at 655 (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). "Federal courts have typically extended equitable relief only sparingly . . . [and] have generally been much less forgiving in receiving late filings where claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Here, Assil fails to demonstrate that he exercised reasonable diligence to pursue his claim. Instead, he relies upon an unsworn, conclusory statement by counsel that "they made repeated telephonic efforts to inquire as to the money's status, but were unable to obtain any information from the government." (Pl. Mem. at 3). Putting aside the fact that plaintiff has not introduced any evidence of such phone calls, the simple act of calling to inquire about the status of a seizure does not even remotely approach the standard of reasonable diligence required for equitable tolling. *Compare, e.g.*, *Johnson*, 86 F.3d at 12 ("This Court has applied the doctrine [of equitable tolling] as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, or has asserted his rights in the wrong forum.") (internal quotation marks and citations omitted).[5]

---

[5]    Assil also fails to describe any particulars about the phone calls, such as when they were made, to whom they were made, and with whom counsel spoke, if anyone. In order to avail oneself of equitable tolling, a plaintiff needs to show that he exercised reasonable diligence *during the period* he wishes to have tolled.

Assil also complains that he was never informed about the court's restitution order, in violation of the MVRA. (Pl. Mem. at 5). This allegation is also unsupported by any evidence (again, Assil relies upon unsworn statements by counsel). In any case, Assil's complaint does not excuse his delay in filing the Rule 41(g) motion or otherwise justify equitable tolling. As noted above, Assil had ample time—six years—to find about the status of Whalley's criminal case; a simple check of the criminal docket sheet (which is publicly accessible via ECF on the court's website) would have revealed the status of that case and the fact that Whalley had been sentenced and ordered to pay restitution. (*See* Arreola Decl. Ex. A (criminal docket)).

Assil also urges the Court to allow the case to proceed so that he can litigate the Government's purported non-compliance with the MVRA in Whalley's criminal case. This request should be rejected. As an initial matter, this Court does not have jurisdiction to review to the sentencing and restitution proceedings conducted by a district court in another jurisdiction. Moreover, even assuming *arguendo* that Assil was a victim and that he did not receive notice of the restitution proceeding (of which there is no evidence on either point), the MVRA does not provide victims with a cause of action against the Government for non-compliance with the MVRA. *See* 18 U.S.C. § 3664(p) ("Nothing in this section . . . shall be construed to create a cause of action not otherwise authorized in favor of any person against the United States or any officer or employee of the United States.").

In short, Assil fails to demonstrate that he exercised reasonable diligence to pursue his claim during the period he wishes to have tolled.

## II.   Plaintiff Fails To Establish Standing

Assil argues that he has standing under three theories, none of which is supported by any evidence (only unsworn statements by counsel) and none of which has any merit.

A.        **Assil Did Not Have Dominion or Control Over the Funds**

As explained in the Government's opening brief, once an individual deposits funds into the

bank account of a third person, the individual loses title to those funds.  *E.g.*, *United States v. All*

*Fund On Deposit In the Name of Khan*, 955 F.Supp. 23, 26-27 (E.D.N.Y.), *aff'd mem.*, 129 F.3d 114

(2d Cir. 1997); *United States v. $79,000 at Bank of New York*, No. 96 Civ. 3493 (MBM), 1996 WL

648934, at *5 (S.D.N.Y. Nov. 7, 1996); *United States v. Millan-Colon*, 836 F.Supp. 1007, 1020

(S.D.N.Y. 1993).  Thus, an individual who deposits funds into the bank account of a third person

lacks standing to assert a claim against the Government contesting forfeiture of the contents of the

account.  *E.g.*, *Khan*, 955 F.Supp. at 26-27; *$79,000 at Bank of New York*, 1996 WL 648934, at *4-6;

*Millan-Colon*, 836 F.Supp. at 1020.[6]

Assil does not suggest that he held title to the money in the accounts.  Instead, he argues that

he retained "ultimate dispositional power over" the funds because they were purportedly deposited

into a "putative attorney trust account" which, he claims, provided him with control.  (Pl. Mem. at

8-9).  However, Assil does not identify any evidentiary support for this allegation.  On the contrary,

he cites to the affidavit of Special Agent Thomas E. Atkinson (the "Atkinson Affidavit" or

"Atkinson Aff."), which states the exact opposite.[7]  As explained in the Atkinson Affidavit, a

$200,000 check drawn from an account held in Assil's name was deposited into an account at

---

[6]

Under New York law, when funds are deposited into a general account, title passes from the
depositor to the bank.  As soon as the money is deposited, it is deemed to be the property of the bank, and
the relationship between the bank and the depositor is that of debtor and creditor, with the depositor having
a contractual right to repayment of his debt on demand.  *E.g.*, *Peoples Westchester Sav. Bank v. FDIC*, 961
F.2d 327, 330 (2d Cir. 1992); *Khan*, 955 F.Supp. at 26-27; *$79,000 at Bank of New York*, 1996 WL 648934,
at *4-5; *Millan-Colon*, 836 F.Supp. at 1020; *Swan Brewery Co. v. U.S. Trust Co. of New York*, 832 F. Supp.
714, 718 (S.D.N.Y. 1993).  But this contractual right belongs to the account holder; it is the account holder
who has the power to exercise dominion and control over the funds in his account.

[7]

The Atkinson Affidavit is attached as Exhibit B to the Canfield Affirmation.

Morgan Stanley Dean Witter ("MSDW") held in the name of Lester F. Whalley (the "Whalley Account"). (S*ee* Atkinson Aff. ¶ 10d). The Whalley Account was a personal brokerage account. (*Id*. ¶ 10b). Although the title of the account may have suggested that it was some type of attorney escrow account, MSDW informed Agent Atkinson that MSDW does not provide this type of account. (*Id.*). The title given to the account appears to have been a device used to lend credibility to the fraudulent scheme, when in fact the Whalley Account was merely a personal brokerage account. Assil offers no evidence to the contrary.

Judge Mukasey's decision in *$79,000 at Bank of New York* is instructive. *See* 1996 WL 648934. There, the United States sought forfeiture of monies that had been deposited in a structured manner, and in violation of federal anti-structuring laws, into a bank account. Nine claimants argued that they were entitled to a portion of the seized funds, even though the bank account was registered in someone else's name, because they had deposited money into the account in order for the money to be wire-transferred out of the country. The court held that the claimants did not have control over the account and, therefore, did not have standing to contest the forfeiture. As Judge Mukasey explained:

> Once the funds are deposited in an account under an individual's name, the account holder is presumed to have title to and control over those funds. *See, e.g.*, 9 C.J.S. Banks and Banking §§ 280, 281 (1996). Claimants have not alleged any facts with respect to control over the account that might overcome this presumption. As the government points out, "none of the claimants alleges that he had any signatory authority over the Gulzar account, any security interest in the account, or any power to direct the disposition of funds in the Gulzar account." In fact, the account was in Gulzar's name and subject to his control. Claimants' identities were unknown to the Bank and thus the Bank, as a practical matter, could not have allowed them to control the funds. Thus, claimants have not alleged facts that would overcome the presumption that deposits made into an account registered in another's name are no longer subject to the depositor's control.

1996 WL 648934, at *4.  Like the claimants in  *$79,000 at Bank of New York*, Assil does not allege

that he had signature authority over the Whalley Account, that his identity was even known to

MSDW, or that as a practical matter he could have controlled the funds.

Finally, Assil appears to overlook the fact that only $6,162.00 was seized from the Whalley

Account.  (*See* Gov't Mem. at 3).  As explained in the Government's opening brief, the other monies

seized during the investigation were from three other accounts—one was held in the name of

Reliance Financial Corporation ("Reliance"), and two were in the name of VCBC Holdings Ltd.

("VCBC").  Assil does not suggest, let alone provide any evidence, that he had dominion or control

over the Reliance and VCBC accounts.  Thus, at most, his standing argument relates only to the

$6,162.00 seized from the Whalley Account.

For these reasons, Assil has failed to establish standing through dominion or control.

**B.**      **Assil Is Not Entitled to a Constructive Trust**

Assil's second argument—that the court should impose a constructive trust—is also easily

rejected.  Under New York law, the existence of a written agreement prohibits the finding of a

constructive trust.  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 213-14 (2d Cir. 2004) (under New

York law, the principle that "the existence of a written agreement precludes a finding of unjust

enrichment - also applies to constructive trust claims").  Here, Assil is not entitled to a constructive

trust because he and Whalley had a written agreement that governs the subject matter of Assil's

claims against Whalley.

Assil's claim is barred for a related reason as well.  Under New York law, a constructive trust

is an equitable remedy that will not be imposed if there is an adequate remedy at law.  *E.g.*, *id.*;

*$79,000 at Bank of New York*, 1996 WL 648934, at *6.  At least two legal remedies were available

to Assil.

9

First, Assil could have maintained a breach of contract action, and possibly an action for fraud, against Whalley. *See $79,000 at Bank of New York*, 1996 WL 648934, at *6 (where claimants deposited money into a third party's bank account, in reliance upon a company's promise to wire-transfer the money, a constructive trust could not be imposed because the claimants could maintain a breach of contract action against the company and therefore had an adequate remedy at law).

Assil does not dispute that he can maintain a breach of contract action against Whalley. Instead, he argues that a breach of contract action would not be adequate because, he claims, Whalley may not have the financial sources to pay any damages, and this is a factual issue that the Court should resolve. (Pl. Mem. at 12). However, the adequacy of a legal remedy does not depend upon the collectibility of a claim. *E.g.*, *Waxter v. State*, 826 N.Y.S.2d 753, 755 (App. Div. 2006). The possibility that Assil will not be made whole does not mean that his remedy is "legally inadequate, simply that it is imperfect." *In re First Central Fin. Corp.*, 377 F.3d at 216.

A second remedy was also potentially available to Assil. If, as he claims, Assil was a victim of Whalley's crimes, he should have petitioned the sentencing court to amend the restitution order under 18 U.S.C. §§ 3664(d)(5) and (o).[8]

Again, Judge Mukasey's decision in *$79,000 at Bank of New York* is instructive. As noted above, the claimants in that action argued that they were entitled to money seized from a bank account registered in someone else's name because they had deposited money into the account. Judge Mukasey held that the claimants were not entitled to a constructive trust because they had

---

[8]    In determining whether Assil has an adequate legal remedy, the Court does not need to consider whether a breach of contract would be barred by statute of limitations, or whether a petition to amend the restitution order would be untimely under 18 U.S.C. § 3664(d)(5). Assil's failure to comply with these deadlines does not entitle him to equitable relief. *See, e.g.*, *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997) (claimants seeking equitable relief must demonstrate, among other things, that their "own fault, neglect, or carelessness did not create the situation for which they seek equitable relief").

10

adequate remedies at law— first, they could maintain a breach of contract action and possibly a fraud action against the individuals who directed them to make a deposit, and second, they could file an administrative petition for remission or mitigation with the Secretary of Treasury.  1996 WL 648934, at *6-7.

Accordingly, Assil is not entitled to the imposition of a constructive trust.

**C.    Assil Has Not Shown the Existence of a Bailment**

Finally, Assil speculates that he "*may* have standing under New York bailment cases," (Pl. Mem. at 13) (emphasis added), but he offers no evidence or explanation to support the existence of a bailment.

Under New York law, "a bailment is the delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, Nos. 01 CV 2946 & 01 CV 7670 (DLC), 2004 WL 359138, at *5 (S.D.N.Y. Feb. 26, 2004) (citation omitted).  The elements of a bailment are "intent to create the bailment, delivery of possession of the bailed items, and acceptance of the items by the bailee." *Id*. (citation omitted).

To determine whether a bailment exists with respect to a bank account, one must first determine whether the bank account is "general" or "special." *Peoples Westchester Sav. Bank*, 961 F.2d at 330; *$79,000 at Bank of New York*, 1996 WL 648934, at *4.  When funds are deposited into a general account, "title passes to the bank as soon as funds are deposited, the funds are commingled with other bank money, and the account holder has a contractual claim for the funds against the bank." *$79,000 at Bank of New York*, 1996 WL 648934, at *4.  By contrast, when funds are deposited into a special account, a bailment is created, and "the bank becomes a bailee of the

depositor, the title of the thing deposited remaining with the latter." *Id.*  Absent evidence of intent,

deposits are presumed to be general rather than specific.  *Peoples Westchester Sav. Bank*, 961 F.2d

at 330; *$79,000 at Bank of New York*, 1996 WL 648934, at *4; *Swan Brewery*, 832 F. Supp. at 718.

Here, Assil does not point to any evidence that the parties intended to create a bailment.  On

the contrary, under the terms of the agreement, the parties intended for Whalley to invest the money

that Assil deposited, with the hope of obtaining more money—not for Whalley to hold the money

and return it to Assil.  (*See* Canfield Aff. Ex. B at 18, 23-25).

Moreover, Assil does not offer any evidence to overcome the presumption that the monies

were deposited into a general account, rather than a special account.  For example, he has not

introduced evidence that MSDW had a duty to segregate the funds in the Whalley Account from

MSDW's own general assets.  *Cf. Peoples Westchester Sav. Bank*, 961 F.2d at 331 (where the

paperwork generated to open an account did not contain any indication that the bank assumed a duty

to segregate funds in the account from its own general assets, this fact was evidence that the account

was intended to be general).

Nor can Assil trace the monies that he transferred to Whalley to the funds that were seized

from either the Whalley Account or any of the other accounts.  *See, e.g., Chilewich Partners v. M.V.*

*Alligator Fortune*, 853 F. Supp. 744, 756 (S.D.N.Y. 1994) (bailment ends when property is returned

to bailor or delivered to another party).  Indeed, Assil does not even suggest that he had a bailment

with Reliance or VCBC—the account holders of the monies seized from the other accounts.

For these reasons, Assil has not met his burden of establishing standing.

### III.    Plaintiff Has Adequate Remedies At Law

It is well-established that "a Rule 41(g) motion is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida v. United States*, 459 F.3d 377, 382 (2d Cir. 2006) (citation omitted).  As noted above, Assil had at least two remedies at law—a breach of contract action against Whalley, and a petition for an amended restitution order.[9]

Because Assil had adequate remedies at law, equitable relief under Rule 41(g) is not available.

### CONCLUSION

For the reasons stated above, the Government respectfully requests that Assil's motion for return of property be dismissed in its entirety.

Dated:        New York, NY
              April 28, 2008

                                            Respectfully submitted,

                                            MICHAEL J. GARCIA
                                            United States Attorney

                         By:        _____/s/_____
                                            Anna E. Arreola
                                            Assistant United States Attorney
                                            Southern District of New York
                                            One Saint Andrew's Plaza
                                            New York, New York 10007
                                            Tel. (212) 637-2218
                                            Fax (212) 637-0421

---

[9]    As previously noted, the Government does not address the merits of Assil's claim that he was a victim entitled to restitution.