USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/26/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ROBERT ASSIL,

                    Plaintiff,

    -against-                    07 Civ. 11037 (DAB)
                                    MEMORANDUM & ORDER

UNITED STATES OF AMERICA,

                    Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff Robert Assil filed the instant action against the United States of America on December 5, 2007, pursuant to Fed. R. Crim. P. 41(g), seeking to compel the Government to return certain personal property that was allegedly seized from him in 1999 during the course of a criminal prosecution in the Southern District of New York.  Plaintiff seeks the return of $200,000, with appropriate interest, legal fees, and expenses that he claims to have placed into the money market account of his business associate Lester F. Whalley, who was indicted on several counts of fraud in <u>United States of America v. Zikorus, et al.</u>, 99 CR 754 (BSJ).[1]  In June 1999, the Government seized, pursuant to a warrant, monies contained in several bank accounts held by Whalley.

---

[1]    On or about July 26, 2000, the prosecution was transferred to the Southern District of California pursuant to Fed. R. Crim. P. 21(b).

Now before the Court is the Government's Motion to Dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that (1) it is barred by the applicable statute of limitations, (2) that Plaintiff lacks standing and (3) that Plaintiff's claim for equitable relief is unavailable because he has an adequate remedy at law. Plaintiff opposes the motion.

For the reasons contained herein, Defendant's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

## I. BACKGROUND

On or about June 9, 1999, Thomas E. Atkinson Jr., a Special Agent with the United States Secret Service spoke with a member of Morgan Stanley Dean Witter's ("MSDW") legal department concerning the firm's suspicion that four accounts held by its clients "were being used to conduct illegal activities." (Canfield Aff. Ex. B ¶ 10.) The four MSDW accounts under suspicion had been opened in April 1999 at the firm's Los Angeles office. (Id.) The first account, numbers ending "6691," was registered to Lester F. Whalley ("Whalley"); the second account, numbers ending "6093," was registered to Reliance Financial Corporation ("Reliance"); the third and fourth accounts, numbers

2

ending "7277" and "6915," were registered to VCBC Holdings Limited ("VCBC"). (Id. Ex. B ¶¶ 10b-10c, 11 & 12.)

Whalley opened the MSDW brokerage account (the "Whalley Account") under the name "Lester F. Whalley, Trustee of the Attorney Trust" on or about April 29, 1999. (Id. ¶ 10b.) Although the name given to this account implied that the account was maintained as an attorney escrow account, Special Agent Atkinson learned from MSDW that it did not offer that type of account. (Id.)

On or about May 11, 1999, Plaintiff deposited a $200,000 check into the Whalley Account. (Id. Ex. B ¶ 10d & Ex. D.) In addition, "on or about May 17, 1999 a $1,000,000 wire transfer from Albert Korngute" ("Korngute") was credited to the Whalley Account. (Id. Ex. B ¶ 10d). Although Plaintiff and Korngute deposited over $1,000,000 into the Whalley account, according to MSDW, "as of June 14, 1999, the balance of [the Whalley Account] was $6,177." (Id. Ex. B ¶ 13.)

On or around June 16, 1999, Korngute told Special Agent Atkinson that "he had been solicited" by Whalley to "make an investment that involved Whalley, Reliance, and VCBC." (Id. ¶ 14). Korngute reported that the investment scheme "involved the repurchasing of United States Treasury Bills and that an

investment of $1,000,000 would earn him a return of many times that amount, risk free." (Id.) Pursuant to a May 1999 written agreement between Whalley, Korngute and Plaintiff, both Korngute and Plaintiff agreed to wire $1,000,000 into the Whalley Account. (Id. ¶ 16a.) Pursuant to their agreement, Whalley agreed to "remit fees of $250,000 to Reliance, $250,000 to VCBC, and $1,500,000 to a firm known as Benedict Lam & Company Barristers, Solicitors and Notaries." (Id. ¶ 16b.) Following a series of additional transactions Plaintiff, Korngute and other investors were promised that they would eventually "receive and split 40 separate payments of $2.5 million, with Korngute and Assil splitting a one-third share of the funds, i.e., about $33 million." (Id. ¶ 17.)

Based on Korngute's report and documents that described the investment scheme, Special Agent Atkinson determined that there was "probable cause to believe that the persons controlling [the MSDW] accounts" were engaged in "transactions or attempted transactions in violation" of wire fraud and money laundering statutes.

In June 1999, United States Magistrate Judge Honorable Sharon E. Grubin issued warrants of seizure upon the contents of all four MSDW brokerage accounts involved in the investment

4

scheme. (Id. Ex. A.) At the time the accounts were seized, $6,162 remained in the Whalley Account, $145,616 remained in the Reliance account, and $1,024,900 and $913,969 remained in both VCBC accounts. (See Id. Ex. A.)

On May 17, 2001, Judge Edward Rafeedie of the United States District Court for the Southern District of California sentenced Whalley to twenty-seven months of imprisonment after Whalley had pled guilty to conspiracy to commit wire fraud and aiding and abetting wire fraud. (Arreola Decl. Ex. B at 17:14-16 & Ex. C at 1.) Additionally, Judge Rafeedie ordered that "the [MSDW] account in [Whalley's] name be used and applied toward the satisfaction of restitution, as well as all other accounts that have been seized by the authorities in this case . . . to pay restitution to the victims . . ." who had suffered losses in the fraudulent scheme. (Id. at 17:1-10). The court entered the judgment of conviction and sentence for Whalley on or about June 4, 2001. (Arreola Decl. Ex. C at 1.) The Secret Service ultimately paid out $2,030,000 in restitution to identified victims of the scheme. (Canfield Aff. Ex. B ¶ 6.)

On December 5, 2007, Plaintiff filed the instant Complaint under Fed. R. Crim. P. 41(g), asserting that "the government, in connection with a criminal investigation . . . seized $200,000.00

5

belonging to Assil" in or about 1999-2000.² (Compl. ¶ 6.) Plaintiff alleges that he was never indicted in connection with the fraudulent scheme, "never notified of any forfeiture proceedings, administrative or judicial, against the money" and that "no proceedings have been instituted to justify continued retention of the property." (Id. ¶¶ 7, 10 & 12.) Plaintiff therefore seeks the "immediate return" of the $200,000 he claims was seized from him. (Id. ¶ 12.)

II.  DISCUSSION

A.  Legal Standard

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). In other words, a plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim

---

² The Court notes that while Plaintiff alleges the government "froze a Morgan Stanley Dean Witter money market account (No. 4841005498709). . . .", the account number referenced in the Complaint does not correspond with the last four digits of any of the four MSDW accounts that the Government seized, pursuant to warrants, in June 1999. (See Canfield Aff. Ex. A.)

6

plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (internal quotation marks omitted). Further, in deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted). However, "general, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, No. 05 Civ. 10669, 2007 WL 2822214, at *7 (S.D.N.Y. Sept. 27, 2007).

In deciding a motion to dismiss, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (quoting Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). Ultimately, a court must dismiss a complaint under Rule 12(b)(6)

"[i]f as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (internal quotations marks omitted).

B.  Actions for Return of Property Under Fed. R. Crim. P. 41(g)

Rule 41(g) of the Federal Rule of Criminal Procedure provides, in pertinent part:

> "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant . . . ."

Fed. R. Crim. P. 41(g). To prevail on a Rule 41(g) motion, the moving party "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." Ferreira v. United States, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005). Where the plaintiff offers evidence that raises genuine factual issues, the court should "[a]t the very least . . . take evidence and make factual findings to identify any items still in the possession of the Government . . . ." Rufu v. United States,

20 F.3d 63, 65 (2d. Cir. 1994). A Rule 41(g) motion is deemed to be an equitable civil action when, at the time it is filed, there are no pending criminal charges against the moving party. See id.

C. Plaintiff's Motion is Untimely

The Second Circuit Court of Appeals has held with respect to Rule 41(g) actions that, "because no statute of limitations governs motions for return of property under Rule 41(g) . . . the six-year catch-all statute of limitations for civil actions against the federal government is applied to certain Rule 41(g) motions," pursuant to 28 U.S.C. § 2401(a).[3] United States v. Bertin, 478 F.3d 489, 492 (2d Cir. 2007). The Court's determination of when the six-year statute of limitations accrued based on the facts of a given Rule 41(g) action is guided by two Second Circuit decisions: Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647 (2d Cir. 1998) and United States v. Bertin, 478 F.3d 489, 492 (2d Cir. 2007).

---

[3] Title 28, United States Code Section 2401(a) provides, in pertinent part: "[e]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

9

In Bertin, the Second Circuit observed that "a rule 41(g) motion accrues when the party seeking return of his property discovered or had reason to discover that his property was improperly seized." 478 F.3d 489, 493 (2d Cir. 2007) (quoting Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647, 654 (2d Cir. 1998) (internal quotation marks omitted)). "When property is seized and not returned or forfeited, 'the claimant knows that he has a present right to its return, and shouldn't be permitted to postpone his request for its return indefinitely.'" Id. (quoting United States v. Simms, 376 F.3d 705, 708 (7th Cir. 2004)). In Bertin, the Government had seized certain personal property belonging to the plaintiff in connection with the plaintiff's prosecution for violation of a federal narcotics statute. Id. at 491. The plaintiff pled guilty to the offense and was sentenced to thirty-seven months' imprisonment. Id. No civil forfeiture proceedings were instituted against the plaintiff's property. Id. at 493. Under those circumstances, the Second Circuit held that:

> where (as here) there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property.

10

Id.

In <u>Bertin</u>, the Second Circuit noted that it had applied a different calculation of the accrual of the Rule 41(g) cause of action in <u>Polanco v. U.S. Drug Enforcement Admin.</u>, because, in that case "no related criminal proceeding materialized post-seizure. . . ." <u>Id.</u> In <u>Polanco</u>, the plaintiff bringing the Rule 41(g) motion had several thousand dollars seized by Government agents from his car pursuant to a non-consensual and warrantless search of the vehicle. <u>Polanco v. U.S. Drug Enforcement Admin.</u>, 158 F.3d 647, 649 (2d Cir. 1998). The plaintiff subsequently pled guilty to a narcotics charge that appeared to be unrelated to the seizure of the money from his car. <u>Id.</u> It was not clear to the Second Circuit whether the seized property of the plaintiff in <u>Polanco</u> had ever been subjected to civil forfeiture proceedings by the Government. <u>Id.</u> at 654. Accordingly, the Second Circuit held that the plaintiff's Rule 41(g) cause of action for the return of the money allegedly seized without connection to a related criminal prosecution:

accrued at the earliest of the following dates:

- at the close of the forfeiture proceedings, however soon after the seizure; or

- if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a

11

>forfeiture action, at which time the claimant - without other notice - had reason to know that the forfeiture proceedings had begun (or that the property was being held) without due process.

Id. The Second Circuit recognized that this rule for determining the accrual of the statute of limitations -- applicable to cases with facts similar to Polanco -- meant that "because a claimant has six years in which to file his claim after it accrues, the claimant may sometimes have a total of eleven years post-seizure to begin complaining about the obvious and overt deprivation of his property." Id. The Second Circuit noted, however, that the Government could take actions to "foreclose the possibility of a claimant bringing a valid suit to recover property a decade after its seizure," by exercising due diligence, including by following its own internal agency regulations with respect to seized property. Id.

In Bertin the Second Circuit distinguished the rule for determining the accrual of the six-year statute set forth in Polanco based on the fact that, in Polanco, the property at issue had been seized without connection to a related criminal proceeding, while in Bertin, the property at issue had been seized in connection with a related criminal proceeding:

>where there has been no related criminal proceeding – as in Polanco – the claimant cannot be expected to know the government's intentions, and will naturally be hesitant to

12

>press the question by focusing on himself the attentions of the prosecutor.

Bertin, 478 F.3d at 493-94.

The Government contends that under Bertin, Plaintiff's Rule 41(g) motion accrued on June 4, 2001, the date that Whalley's sentence and judgment of conviction was entered by Judge Edward Rafeedie of the United States District Court for the Southern District of California. (Def.'s Mem. Law at 6.) That is the appropriate date to measure the accrual of the six-year statute of limitations, according to the Government, because it had not sought criminal forfeiture from Whalley but instead sought and obtained an order of restitution with respect to the property seized from Whalley pursuant to a warrant in June 1999. (Id.) Plaintiff, on the other hand, urges the Court to apply the rule set forth in Polanco because the Government never prosecuted him in connection with the alleged seizure of his property. (See Pl.'s Mem. Law at 2-4.)

While it is apparent that the Government did not charge Plaintiff in connection with the seizure of funds from the Whalley Account, it does not follow that there was therefore no "related criminal proceeding" with respect to the property seized. Plaintiff's property, allegedly deposited into the Whalley Account, was seized pursuant to a warrant in connection

with United States of America v. Zikorus, et al. the criminal proceeding in which Whalley was indicted, in which he eventually pled guilty and was ultimately sentenced.  The Court finds that the term "related criminal proceeding", as discussed in Bertin – the presence of which the Second Circuit used to distinguish Polanco – does not refer solely to criminal proceedings brought against a claimant under Rule 41(g), but rather to any criminal proceeding that is related to the alleged improper seizure of property from the claimant.  In the instant case, on May 17, 2001, Judge Edward Rafeedie of the United States District Court for the Southern District of California sentenced Whalley and ordered that the funds seized from Whalley's accounts at MSDW, pursuant to warrants, be disbursed as restitution to the victims of his fraud.  (Arreola Decl. Ex. B at 17:14-16 & Ex. C at 1.) As of the date that Judge Rafeedie's sentence was entered on the docket, June 4, 2001, it was clear that the Government would not be seeking forfeiture of the funds contained in the Whalley Account since those funds were designated for restitution.  Thus, it would make little sense to apply the statute of limitations accrual rule set forth in Polanco which assumes that, in the absence of related criminal proceedings, a Rule 41(g) claimant must wait and see whether the Government will ultimately seek

14

civil forfeiture of the claimed property.

The Court therefore finds that, pursuant to the rule set forth in Bertin, the six-year statute of limitations on Plaintiff's Rule 41(g) motion accrued on June 4, 2001, when Whalley's judgment of conviction and sentence was entered on the docket in United States of America v. Zikorus, et al.. Plaintiff did not file the instant Complaint until December 5, 2007 -- six months after the statute of limitations had expired. Accordingly, the Court finds that Plaintiff's Rule 41(g) action is barred by the statute of limitations.

D.  Plaintiff is Not Entitled to Equitable Tolling

Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances. See Johnson v. Nyack Hosp., 86 F.3d 8 (2d Cir. 1996) (citation omitted)). "To avail himself of this doctrine, the plaintiff must show that he pass[ed] with reasonable diligence through the period [he] seeks to have tolled." Polanco, 158 F.3d at 655 (quoting Johnson, 86 F.3d at 12). Furthermore, "[f]ederal courts have typically extended equitable relief only sparingly ... [and] have generally been much less forgiving in receiving late filings where claimant

failed to exercise due diligence in preserving his legal rights." <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 96 (1990).

Plaintiff has not provided the court with a sufficient basis to find that he is entitled to equitable tolling. While Plaintiff argues that he "was never notified of any forfeiture proceedings . . . against the money," (Compl. ¶ 10), that is because there were no forfeiture proceedings; the funds contained in the Whalley Account were applied towards restitution to Whalley's victims. Moreover, although Plaintiff's counsel represent in their Memorandum of Law that "they made repeated telephonic efforts to inquire as to the money's status, but were unable to obtain any information from the government" (Pl's Mem. Opp. at 3), no sworn affidavits or declarations to that effect have been submitted to the Court. The Court therefore finds the Plaintiff has failed to make a showing that he is entitled to equitable tolling of the statute of limitations based on the exercise of due diligence.

Accordingly, because the action is time-barred and because the Court finds that Plaintiff is not entitled to equitable tolling, the Government's Motion to Dismiss the Complaint is GRANTED.

III. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss the instant action pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that it is barred by the applicable statute of limitations and that no equitable tolling is warranted, is hereby GRANTED. The Clerk of the Court is directed to close the docket in this case.

SO ORDERED.

Dated:   New York, New York
         August 25, 2008

*Deborah A. Batts*
Deborah A. Batts
United States District Judge